FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity, Plaintiff,

v.

Manuel DE JESUS VELEZ, Defendant.

Civ. No. 80–0074.

United States District Court,
D. Puerto Rico.

April 20, 1981.

Gustavo A. Gelpí, San Juan, P. R., for plaintiff.

Celestino Morales, Jr., San Juan, P. R., for defendant.

## OPINION AND ORDER

GIERBOLINI, District Judge.

Plaintiff is trying to collect on a promissory note in the principal amount of $25,000 which it acquired from the receiver of Banco de Ahorro de Puerto Rico (the Bank), pursuant to the provisions of the Federal Deposit Insurance Act (the Act), particularly 12 U.S.C. Section 1823(e). Jurisdiction, which according to the complaint is invoked under 12 U.S.C. § 1819 and 28 U.S.C. § 1345, is in dispute. We will resolve this issue in the course of this Opinion.

Defendant counterclaimed alleging the existence of an agreement to the effect that the note would not be collected until redemption by the Bank of $25,000 in debentures owned by him which had been pledged as collateral security for the aforesaid loan. Answering the counterclaim, plaintiff attacked the validity and enforceability of the alleged agreement and denied that the debentures were due and payable as a set-off. Plaintiff also asserted the illegality of the agreement relied upon by defendant.

The principal issues presented in this action concern the jurisdiction of this Court to entertain the claim and counterclaim and the validity and enforceability of the alleged agreement.

The facts, circumstances and documents pertinent to said issues have been stipulated by the parties and the case was submitted without a hearing on the basis of said stipulation; the transcript of defendant's deposition and briefs in support of the respective contentions of the parties. From the evidence submitted the Court makes the following findings:

The Bank was organized in 1966 under the provisions of the Savings Bank Act of Puerto Rico, 7 LPRA Sections 1001–1046. Defendant was the owner of the Bank debentures with a face value of $25,000.00,[1] and was also a director of the Bank until his resignation in April, 1976. About the time of his resignation he requested the then president of the Bank, Héctor Ceinós, to redeem his debentures which were about to mature or had already matured on April 15, 1975. The terms and conditions of the debenture notes held by defendant provided that payment of the principal amount "is subject to the approval of the Federal Deposit Insurance Corporation and of the Secretary of the Treasury of the Commonwealth of Puerto Rico" (the Secretary). They also provided that in case of receivership or liquidation of the Bank, payment of the debentures was subordinated to prior payment of depositors and other creditors of the Bank entitled to priority. There is no evidence that the required approval had been obtained. On the contrary, the minutes of the April 26, 1976 meeting of the Board of Directors of the Bank reflect the critical financial condition of the Bank and the Secretary's opinion that the maturity of the debentures be extended to April 15, 1981.

Due to the foregoing, the president of the Bank informed defendant that the only thing that could be done was to arrange for

---

1. The amount and value of debentures owned by defendant was specified in paragraph 5 of the Stipulation. Copy of the debenture notes was not appended thereto but were submitted together with plaintiff's reply brief of December 31, 1980. No objection has been filed as to the genuineness or authenticity of the copies submitted and in view of their relevance to the issues involved, the copies are admitted in evidence.

a loan at another bank, Banco Obrero, and after a year arrange for the Bank to lend defendant the funds to repay that loan. Defendant accepted the arrangement because he wanted his money and would have sued the Bank if the loan arrangement had not been made. Although the funds were to be received as a loan, he never intended its repayment except upon redemption of the debentures. The letter dated July 9, 1976 on which defendant relies provided that "under no circumstances will the Bank collect the loans granted until the Bank has repaid the debentures." The alleged agreement was never discussed, approved or ratified by the Board of Directors or the Bank's loan committee.

It should be noted that the letter itself never formed part of the Bank's official records. A copy of it was retained by the president, in his personal safe together with a similar letter to another director. Both letters were discovered during the course of the Bank's examination, at which time the president admitted to the examiners that the real purpose of the agreement was to "in effect prepay indirectly the debentures".

When the Banco Obrero loan became due, defendant requested the Bank to honor its commitment. According to the minutes his request was reported at the Board meeting of August 7, 1977 and it was resolved that a loan could be granted under the terms and conditions to be established by the Board. There is no evidence that such terms and conditions were ever established. However, on December 16, 1977 the Bank disbursed $25,000 for payment of the Banco Obrero loan and defendant delivered the debentures to the Bank as security for the loan. According to the then president of the

Bank, Roberto López Alvarez, the loan was granted to avert defendant's threat of litigation, but neither the promissory note nor the other loan documents incorporated or made reference to the July 9, 1976 letter. The note provided for payment of monthly interest with an acceleration clause in the event of default. Defendant paid interest on his obligation even after the Bank closed, or until November 15, 1979 when he informed plaintiff that since the Bank had not paid interest on the debentures since April 1978, he would make no further interest payments. The note was then declared in default and this action commenced.

In the meantime the Bank had been closed on September 5, 1978 after the Secretary determined it was insolvent. Since the Federal Deposit Insurance Corporation was the insurer of the Bank's deposit liabilities, it was tendered appointment as receiver of the Bank under 7 LPRA Section 1031(a). Said appointment provided for specific authority and power to arrange for the purchase of some of the assets and assumption of deposit liabilities by another bank (the Assuming Bank). In order to effectuate that transaction, the Corporation has the power to sell to itself in its corporate capacity[2] the unacceptable assets of the Bank. As required by law, the FDIC, in its capacity as receiver, accepted the appointment tendered. 12 U.S.C. Section 1821(e).[3] As Receiver it then entered into the transactions with the FDIC and with the assuming bank, Banco Comercial de Mayaguez, as authorized by the Secretary and approved by the order of the Superior Court of Puerto Rico dated September 5, 1978. Said order, approving the statutory procedure and transactions undertaken, is now final.[4] De-

---

2. The dual role and capacities of plaintiff in the liquidation of a state insured bank is specifically authorized in the Act. 12 U.S.C. Sections 1821 and 1823(d and e). It is likewise authorized to enter into the transaction undertaken in this case. A thorough discussion of the dual function of this agency is found in *FDIC v. Abraham*, 439 F.Supp. 1150, 1151–52 (E.D.La. 1977).

3. Hereafter we will make reference to the different capacities of the Corporation as FDIC

when referring to its corporate capacity and as Receiver when referring to its capacity as receiver of the bank.

4. Although defendant assailed the validity of this order in its brief of October 31, 1980, this Court is not inclined and finds no basis for reviewing, much less disturbing, a final ruling of that Court. Defendant's belated attack constitutes an impermissible collateral attack which we cannot entertain. *FDIC v. Moore*, 448 F.Supp. 493, 496 (D.S.C.1978); cf. *Read v.*

fendant's note was among the assets purchased by the FDIC from the Receiver of the Bank.

The Court specifically finds and concludes that the arrangement and agreement evidenced by the letter of July 9, 1976 was a subterfuge to circumvent legal and contractual impediments to redemption of the debentures. 7 LPRA Section 1017(b) and 12 U.S.C. Section 1828(i)(1). On the basis of the foregoing, the Court makes the following conclusions of law:

■ Federal jurisdiction to entertain the FDIC's claim is challenged on the basis that the suit is prosecuted by the Corporation in its capacity as receiver of a state bank and that it involves only the rights or obligations of depositors, creditors, stockholders and the state bank under state law. If so, the claim would be excluded from the jurisdictional grant of 12 U.S.C. Section 1819. However, the pleadings and evidence on record establish that the FDIC acquired the note from the Receiver pursuant to 12 U.S.C. Section 1821(e). The procedure followed has been recognized and sanctioned by federal courts in numerous decisions. *Brown v. New York Life Insurance*, 152 F.2d 246 (9th Cir. 1945); *Lamberton v. FDIC*, 141 F.2d 95 (3rd Cir. 1944); *FDIC v. Rectenwall*, 97 F.Supp. 273 (N.D.Ind.1951); *FDIC v. Abraham*, 439 F.Supp. 1150 (E.D. La.1977). Federal jurisdiction over suits to reduce to judgment assets and claims purchased by the corporation from the receiver of a bank under 12 U.S.C. Section 1823(e) has been repeatedly upheld. *FDIC v. Ashley*, 585 F.2d 157 (6th Cir. 1978); *FDIC v. Godshall*, 558 F.2d 220 (4th Cir. 1977); *FDIC v. Abraham, supra*, at 1153; *FDIC v. López*, 448 F.Supp. 843 (D.P.R.1978), affirmed, *sub nom, FDIC v. Otero*, 598 F.2d 627 (1st Cir. 1979). Jurisdiction to entertain plaintiff's claim based on the note so acquired is clear under the Act.

■ We find that the FDIC has a valid and enforceable interest in the note executed by defendant, that said obligation is

*Elliott*, 94 F.2d 55, 59 (4th Cir. 1938) (holding procedural irregularities are cured by final

presently in default and that defendant is liable for payment of principal, accrued interest thereon and penalties.

■ Defendant's counterclaim requesting a declaration that the debentures are due and payable by virtue of the alleged agreement and that a set-off be permitted, fails to state a claim upon which relief may be granted. The validity and enforceability of an agreement to defeat a claim by the FDIC on a note acquired under 12 U.S.C. Section 1823(e) is a federal question to be determined by reference to federal law. *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). The *D'Oench* case stands for the proposition that the Federal Deposit Insurance Act, 12 U.S.C. Sec. 1811 *et seq.*, reveals a federal policy of protecting the FDIC and the public funds which it administers against misrepresentations as to assets in the portfolios of the banks which it insures. Id. at 457, 62 S.Ct. at 679. This policy is also reflected in 12 U.S.C. § 1823(e), second paragraph, which provides that:

"No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this Section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank."

■ The alleged agreement in this case had for its objective the prepayment of defendant's debentures without the prior authorization by the banking authorities, in contravention, of statutory prohibitions, as well as the stated terms of the debentures.

judgment after time to appeal therefrom has expired).

7 L.P.R.A. Section 1017(a) and 12 U.S.C. Section 1828(i)(1). Under the law of Puerto Rico, 31 L.P.R.A. Section 3372, and as a matter of federal policy, a contract may not contravene law, morals or public order. As such, the agreement was void *ab initio*; 31 L.P.R.A. Sections 4 and 3432; *Serra v. Salesian Society*, 84 P.R.R. 322 (1960); and neither the president of the Bank nor the Board of Directors had any authority to approve or ratify the agreement for prepayment of the debentures. Absent the approval of the banking authorities, defendant had no enforceable right to redemption of the debentures by the Bank. The agreement is likewise unenforceable against the FDIC not only because of its unlawful purpose but because of the federal policy of protecting the FDIC from agreements such as this one. The FDIC "is simply not a successor in interest of the closed bank", for Section 1823(e) "provides it with more protection than the bank or its receiver". *FDIC v. Vogel*, 437 F.Supp. 660, 663 (E.D. Wis.1977).

■ In the *D'Oench* case, *supra*, the Supreme Court held that the maker of a note was estopped from raising against the FDIC the defense of a promise by the bank that the note would not be called, similar to the claim asserted here, because "his act contravenes a general policy to protect the institution of banking from such secret agreement". *D'Oench, Duhme & Co. v. FDIC, supra*, 62 S.Ct. at 680. Defendant's contention that he was unaware of any illegality is not a defense under *D'Oench*, Id. Neither is it under Puerto Rican law, 31 L.P.R.A. Section 2. The Court in *D'Oench* quoted with approval from *Mount Vernon Trust Co. v. Bergoff*, 272 N.Y. 192, 196, 5 N.E.2d 196, 197:

"The defendant may have not have intended to deceive any person, but, when she executed and delivered to the plaintiff bank an instrument in the form of a note, she was chargeable with knowledge that, for the accommodation of the bank, she was aiding the bank to conceal the actual transaction. Public policy requires that a person who, for the accommoda-

tion of the bank executes an instrument which is in form a binding obligation, should be estopped from thereafter asserting that simultaneously the parties agreed that the instrument should not be enforced."

315 U.S. at 459, 62 S.Ct. at 680.

In *Mount Vernon Trust Co., supra* the bank itself was allowed to recover from the maker of the note despite an agreement to the contrary.

Defendant's contention that the *D'Oench* doctrine does not apply because the agreement in this case was not secret and its existence known to the FDIC at the time of the acquisition of the note is, likewise, not a valid defense. The agreement was not approved by the Board, nor reflected in its minutes, nor made an official record of the Bank, and was not disclosed to the banking authorities or the creditors at its inception. Instead, it was concealed in the president's safe. Its discovery by the Bank examiners does not cure its illegal purpose or the initial deception which the agreement was designed to produce upon the creditors and the public authorities. As propounded by the Court in *D'Oench*:

"The test is whether the note was designed to deceive the creditors or the public authority or would tend to have that effect. It would be sufficient in this type of case if the maker lent himself to a scheme or arrangement whereby the banking authority on which respondent relied in insuring the bank was or was likely to be misled."

315 U.S. at 460, 63 S.Ct. 681.

It has also been held that the fact that the FDIC had notice of the agreement prior to purchase of the note is irrelevant unless notice thereof had been given in the manner provided by 12 U.S.C. Section 1823(e). *FDIC v. First Mortgage Investors*, 485 F.Supp. 445, 450–452 (E.D.Wis.1980); *FDIC v. Sue Baughn*, Civil No. 1–78–20, (E.D. Tenn. Dec. 26, 1978) (order granting summary judgment). Since notice in this case was not given in the manner required by said statute, the agreement may not be asserted to defeat the right of the FDIC to collect upon the note.

 Aside from the aforesaid, a set-off of the debentures against the note was not possible since the obligations are not mutually extinguishable. The debentures are not due until April 15, 1981, whereas the note is presently due. However, even if the debentures were found to be due and payable presently, there is no mutuality, since the note is payable to the FDIC (in its corporate capacity), whereas the debentures are payable by the Receiver of the Bank. Defendant's claim based on his debentures is enforceable only against the Receiver but not against the FDIC in its corporate capacity. *FDIC v. Vogel, supra*, 437 F.Supp. at 665. The fact that the FDIC is acting in two capacities does not affect the outcome. *FDIC v. Ashley, supra; FDIC v. Godshall, supra; FDIC v. Abraham, supra.* As insurer the FDIC "is not saddled with liabilities of the insolvent bank", *FDIC v. Smith*, 466 F.Supp. 843, 845 (N.D.Ga.1979); and since it is not liable for payment of the debentures the action thereon can only be brought against the Receiver. *FDIC v. American Bank Trust Shares*, 460 F.Supp. 549, 559 (D.S.C.1978). We conclude that compensation or set-off cannot take place either under the law of Puerto Rico, 31 L.P.R.A. Sections 3221, 3222; *García Méndez v. Vázquez Bruno*, 440 F.Supp. 985 (D.P.R. 1977), or under federal law. *FDIC v. Smith, supra*, 466 F.Supp. at 845; *FDIC v. James T. Barry Co.*, 453 F.Supp. 81, 83 (E.D.Wis.1978).

 Finally defendant claims to have an absolute right to redemption of the debentures but this contention is not substantiated by the evidence. As previously pointed out, after insolvency, the subordination clause precludes a payment to debenture holders until all depositors and other creditors of the Bank entitled to priority shall have been paid in full. In view of the subordination clause defendant cannot improve his status to that of a depositor or creditor by means of the alleged agreement after having agreed to accept a subordinated position. *In The Matter of Weis Securities*, 425 F.Supp. 212 (S.D.N.Y.1977) affirmed, 605 F.2d 590 (2d Cir. 1978).

 When the Bank was closed by the Secretary of the Treasury and the FDIC was appointed Receiver, it had two options. First, it could have paid off insured deposits to the statutory limit with the Corporation being subrogated to the rights of insured depositors against the receivership estate. 12 U.S.C. Section 1821(f). All depositors with deposits in excess of the insured limit, and all general creditors, would have had to await payment of a *pro rata* dividend based upon recoveries realized by the Receiver from the liquidation of the Bank's assets. In this event defendant's claim would be subordinated to those claims. The second alternative, which was utilized in this case, is known as a "purchase and assumption transaction," and is authorized by 12 U.S.C. Section 1823(e). Under this option, bids were solicited by the Receiver from area banks for the right to purchase certain assets and assume virtually all of the Bank's deposits and other liabilities. Banco Comercial de Mayaguez was the winning bidder. Assets not purchased by Banco Comercial were sold by the Receiver to the FDIC, in its corporate capacity, for liquidation. The price of the assets purchased by the FDIC from the Receiver was the amount necessary to make up the difference between the value of the assets purchased and the liabilities assumed by Banco Comercial, the latter being greater than the former. Under the agreement of sale between the Receiver and the FDIC, the latter proceeds to liquidate the assets purchased by it, and reimburses itself for the cash purchase price, plus all expenses of liquidation. The Receiver retains a remainder interest in any assets left and would then make a *pro rata* distribution to subordinated debentureholders of record and, in the event that sufficient assets remain after satisfying such debentureholders in full, distribution would be made to common stockholders.

If the FDIC had simply paid off depositors to the statutory limit it clearly would have been subrogated to the rights of the depositors according to 12 U.S.C. Section 1821(g). In the case of a purchase and assumption transaction under 12 U.S.C. Sec-

tion 1823(e), such as the one facilitated in the case of Banco de Ahorro, the Court finds that the express language and intent of both the debentures and the agreements entered into by the FDIC, the Receiver and the assuming bank (Banco Comercial de Mayaguez), as well as the federal policy being carried out by the FDIC under the Act, *D'Oench, Duhme & Co. v. FDIC, supra*, 315 U.S. 447, 62 S.Ct. 676, manifest the intent of the parties including defendant, that the latter's rights under the debentures be subordinated to those of the FDIC.

We therefore hold that in the case of a Section 1823(e) purchase and assumption transaction, no less than in the case of a direct payment to depositors, the rights of the defendant under the debenture are subordinated to those of the FDIC until such time as the latter has realized collections on the assets purchased by it so as to recover the cash infused to facilitate the purchase and assumption, plus interest and the costs of collection.

IN VIEW OF THE FOREGOING, defendant's claims for payment of his debentures or for set-off of the debenture against the note must fail.

WHEREFORE, defendant's counterclaim is hereby dismissed. Plaintiff's claim for the principal amount of the note plus accrued interest and as provided in the note, for any penalties or liquidated damages recoverable in the event of default is granted.

The Clerk shall enter judgment accordingly.

IT IS SO ORDERED.