**FEDERAL DEPOSIT INSURANCE CORPORATION,**
Plaintiff-Appellee,

v.

**INVESTORS ASSOCIATES X., LTD. and Milton A. Turner,**
Defendants-Appellants.

Nos. 84–6013, 6014.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 29, 1985.

Decided Oct. 23, 1985.

G. Wendell Thomas, Jr. (LEAD) argued, Kennerly, Montgomery & Finley, Knoxville, Tenn., for defendants-appellants.

Ellis A. Sharp, E. Reynolds Davies, Jr. (LEAD) argued, Morton, Lewis, King & Krieg, Nashville, Tenn., for plaintiff-appellee, in No. 84–6013.

E. Reynolds Davies, Jr. (LEAD) argued, Morton, Lewis, King & Krieg, Nashville, Tenn., for plaintiff-appellee, in No. 6014.

Before: MARTIN and CONTIE, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.

CELEBREZZE, Senior Circuit Judge.

Defendants-appellants Milton Turner and Investors Associates X., Ltd. (collectively and individually referred to as "Turner") appeal from a district court's decision granting summary judgment in favor of plaintiff-appellee Federal Deposit Insurance Corporation (FDIC) on two promissory notes in the amounts of $750,000.00 and $140,000.00. On appeal, Turner contends that issues of material fact exist as to his defenses that he had a non-liability agreement, that he was fraudulently induced into signing the two notes, that the FDIC had knowledge of the fraudulent scheme, that the transaction violated both federal and state securities laws, *see* 15 U.S.C. §§ 77q(a), 78j(b) (1982); Tenn.Code Ann. § 48–2–121 (1984), and that the interest was incorrectly calculated on the $750,-000.00 note. We affirm.

Viewing the evidence in the light most favorable to Turner, *see* Fed.R.Civ.P. 56(c); *SEC v. Blavin*, 760 F.2d 706, 710 (6th

Cir.1985) (per curiam), this case arises out of the following transaction. In November, 1981, Turner was contacted and asked by C.H. Butcher Jr. to attend a meeting concerning the recapitalization of the City and County Bank of Knox County (C & C). Turner attended the meeting at which he was informed by Butcher, C & C's Chief Executive Officer, that due to C & C's tremendous growth new capital was needed to meet state and federal requirements. Butcher proposed to raise 7.5 million dollars in new capital by setting up and selling stock in a series of limited partnerships. Butcher assured Turner that he would not incur any personal liability in relation to the transaction and produced letters ostensibly indicating that both the state banking authorities and the FDIC approved of the refinancing plan. Moreover, Butcher explicitly promised to personally make up any shortfall which might arise during the course of the refinancing.

Based upon Butcher's assurances and the letters, Turner agreed to participate in the recapitalization and became a twenty percent general partner in Investors Associates X., Ltd. Turner paid for the partnership interest by signing two blank notes, which Butcher promised him would be filled in collectively for $750,000.00 Despite Butcher's promise, one note was made payable to the United American Bank of Nashville (UAB) for $750,000.00 and the other note was made out for $140,000.00, payable to C & C. Further, neither note contained any limitations upon Turner's liability. Subsequently, both UAB and C & C went into receivership and were taken over by the FDIC in its corporate capacity. The FDIC then brought this suit against Turner to recover on the two notes.

■ In *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956

(1942), the Supreme Court held that the maker of a note is estopped from asserting a failure of consideration defense against the FDIC if in executing the note he lends himself to a fraudulent transaction which is likely to mislead banking authorities. The Court in *D'Oench* made clear that its holding did not depend upon whether the maker had a fraudulent intent. *D'Oench*, 315 U.S. at 458–60, 62 S.Ct. at 679–80. In fact, the Court explicitly stated that the maker would be liable even if he was "ignorant of" the fraudulent scheme, so long as he was responsible for the creation of the note. *D'Oench*, 315 U.S. at 461, 62 S.Ct. at 681. Consistent with the overwhelming weight of authority, this Court has indicated that in applying *D'Oench* the maker's intent is irrelevant. *FDIC v. Hatmaker*, 756 F.2d 34, 38 (6th Cir.1985) ("If Hatmaker did lend himself to [a fraudulent] scheme, he was estopped under the *D'Oench, Duhme* holding from asserting failure of consideration as a defense." [1]); *accord FDIC v. First National Finance Co.*, 587 F.2d 1009, 1012 (9th Cir.1978); *FDIC v. Stone*, 578 F.Supp. 144, 145 (E.D. Mich.1983); *FDIC v. de Jesus Velez*, 514 F.Supp. 829, 834 (D.P.R.1981), *aff'd*, 678 F.2d 371 (1st Cir.1982); *FDIC v. Vineyard*, 346 F.Supp. 489, 493 (N.D.Tex.1972); *cf. Bryan v. Bartlett*, 435 F.2d 28, 35–37 (8th Cir.1970), *cert. denied*, 402 U.S. 915, 91 S.Ct. 1373, 28 L.Ed.2d 658 (1971); *Duttine v. Savas*, 455 F.Supp. 153, 158–59 (S.D.W. Va.1978), *aff'd sub nom. Diversified Mountaineer Corp. v. Duttine*, 612 F.2d 841 (4th Cir.1979) (per curiam). Thus, we hold that the only relevant inquiry in determining if a maker of a note is estopped from asserting a defense under *D'Oench* is whether he lent himself to a transaction which is likely to mislead banking authorities.[2] *D'Oench*, 315 U.S. at 460, 62 S.Ct. at

---

**1.** The Court in *Hatmaker* approved of the following jury instruction:

It is not necessary, however, for the FDIC to prove that Mr. Hatmaker had knowledge of the specific scheme or fraudulent arrangement which gave rise to his defense or [sic] failure of consideration; rather, it must prove

by [a] preponderance of the evidence that Mr. Hatmaker lent himself to such a scheme....

**2.** This Court's recent decision in *FDIC v. Leach*, 772 F.2d 1262, (6th Cir.1985) is not inconsistent with our opinion in this case. Although the Court in *dicta* indicated that "the rationale of *D'Oench* seems to be limited to situations in which the maker of the note knowingly contrib-

680. We now consider whether Turner lent himself to a transaction which was likely to mislead banking authorities.

■ In this case, Turner signed two blank notes upon Butcher's assurance that he would never have to pay on the notes. This limitation of liability promise was oral and never reduced to writing. Turner also failed to take any steps to determine if the transaction was proceeding as Butcher had promised. Turner's signing of the two blank notes based upon Butcher's unrecorded, oral assurances that he would not be personally liable and that he would never have to pay was likely to mislead the banking authorities. *D'Oench*, 315 U.S. at 460, 62 S.Ct. at 680. ("Plainly one who gives such a note to a bank with a secret agreement that it will not be enforced must be presumed to know that it will conceal the truth from the vigilant eyes of the bank examiners."); *FDIC v. Hatmaker*, 756 F.2d 34, 38 (6th Cir.1985) (signing of blank notes likely to mislead banking authorities). Turner argues, however, that *D'Oench* is inapplicable because he acted in good faith and, in fact, based upon the letters presented by Butcher, believed that the state and federal banking authorities approved of the transaction and because the FDIC was aware of the circumstances surrounding the execution of the two notes.[3]

As we have previously noted, if the maker of a note lends himself to a fraudulent scheme which is likely to mislead the banking authorities, *D'Oench* estoppel will apply regardless of the maker's intent. Thus, Turner's good faith is simply irrelevant.[4] Turner's second argument, that *D'Oench* is inapplicable due to the FDIC's knowledge of the circumstances surrounding the execution of the two notes, requires more careful analysis. Initially, we note that Turner is not arguing that the FDIC approved of the transaction, only that the FDIC knew of the transaction.[5] In our view, such knowledge by the FDIC does not preclude the application of *D'Oench*. *D'Oench* is essentially premised upon the proposition that a wrongdoer or one who lends himself to aid a fraudulent scheme should not be able to defend his actions based upon events emanating out of a transaction which violates public policy. *D'Oench*, 315 U.S. at 459, 62 S.Ct. at 680 ("it is the 'evil tendency' of the acts to contravene the policy governing banking transactions which lies at the root of the rule") (quoting *Deitrick v. Greaney*, 309 U.S. 190, 198, 60 S.Ct. 480, 484, 84 L.Ed. 694 (1940)). Thus, the focus in applying *D'Oench* is upon the fact that the maker's defense arises out of

utes to the misrepresentation," *Leach*, at 1267, the Court did not reach the question of whether *D'Oench* was applicable to the facts of that case. *Leach*, at 1266, 1267. In fact, the sole issue in *Leach* was whether this Court's decision in *FDIC v. Wood*, 758 F.2d 156 (6th Cir.1985), precluded the assertion of a failure of consideration defense against the FDIC.

3. The FDIC has not in any way attempted to controvert this allegation, and hence, for purposes of summary judgment, we treat the allegation as true.

4. This result is consistent with general commercial paper principles. A person signing a blank note generally will be liable to a subsequent holder in due course for the amount of the note as completed. U.C.C. §§ 3–406 & comment 2 ("By drawing the instrument and 'setting it afloat upon a sea of strangers' the maker or drawer voluntarily enters into a relation with later holders which justifies his responsibility. In this respect an instrument so negligently drawn as to facilitate alteration does not differ in principle from an instrument containing blanks which may be filled."), 3–407(3) (holder in due course may enforce an incomplete instrument as completed) & comment 4 ("Where blanks are filled or an incomplete instrument is otherwise completed, this subsection ... plac[es] the loss upon the party who left the instrument incomplete...."), 3–115 comment 5 ("The loss should fall upon the party whose conduct in signing the blank paper has made the fraud possible....") (1978); *see generally* R. Nordstrom & A. Clovis, Commercial Paper 52–60, 189–90 (1972).

5. The letter produced by Butcher which ostensibly indicated that the FDIC approved of the transaction was never introduced into evidence before the district court. If such a letter, in fact, had been sent by the FDIC to Butcher, we would have to address the question of whether the FDIC should be estopped from collecting on the two notes. *See FDIC v. Harrison*, 735 F.2d 408 (11th Cir.1984) (concluding estoppel may run against FDIC).

a fraudulent transaction and not upon the knowledge of the FDIC. Regardless of the FDIC's knowledge of the circumstances surrounding the transaction, the fraudulent scheme is still contrary to public policy and the wrongdoer still should not be able to benefit from something that transpired during the course of such a scheme. Accordingly, we reject Turner's defense that *D'Oench* is inapplicable because the FDIC knew of the facts surrounding the transaction. *Accord FDIC v. de Jesus Velez,* 514 F.Supp. 829, 834 (D.P.R.1981), *aff'd,* 678 F.2d 371 (1st Cir.1982); *cf. FDIC v. Merchants National Bank of Mobile,* 725 F.2d 634, 640 (11th Cir.) (knowledge of FDIC irrelevant for purposes of 12 U.S.C. § 1823(e) (1982)), *cert. denied,* — U.S. ——, 105 S.Ct. 114, 83 L.Ed.2d 57 (1984); *FDIC v. de Jesus Velez,* 678 F.2d 371, 375 (1st Cir.1982) (knowledge of FDIC irrelevant for purposes of 12 U.S.C. § 1823(e) (1982)). Having concluded that this case falls within *D'Oench,* we must next consider the extent to which *D'Oench* precludes Turner's defenses.

 *D'Oench,* itself, only concerned the defense of failure of consideration. Nevertheless, the Court's reasoning in *D'Oench* extended further than the failure of consideration defense presented. As noted before, the basis of the Court's decision was that the maker of a note should not be able to assert as a defense the very secret agreement which violated public policy. *D'Oench,* 315 U.S. at 461. Thus, the Court was less concerned with the particular defense presented by that case, failure of consideration, than with the fact that the maker's defense originated out of the secret agreement transaction. Accordingly, we conclude that *D'Oench* estops the maker of a note from asserting any defense arising out of the fraudulent scheme, including representations made by another participant in the scheme. *FDIC v. Timbalier Towing Co.,* 497 F.Supp. 912, 922 (N.D. Ohio 1980); *British Columbia Investment Co. v. FDIC,* 420 F.Supp. 1217, 1224 (S.D. Cal.1976). Applying the foregoing princi-

ple to this case, since Turner's non-liability agreement, fraud in the inducement, and state and federal security law defenses are all premised upon Butcher's misrepresentations in perpetrating the fraudulent scheme, Turner is estopped from asserting them.

Finally, Turner contends that the FDIC incorrectly calculated the interest on the $750,000.00 note.[6] The FDIC introduced an affidavit of an account officer who, based upon his interpretation of the note, averred that interest accrued on the note at a fourteen percent rate. Once this affidavit was introduced, the burden fell upon Turner to create an issue of fact by responding with similar evidence. *See* Fed. R.Civ.P. 56(e); *Smith v. Hudson,* 600 F.2d 60, 64–65 (6th Cir.), *cert. dismissed,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). Since Turner failed to introduce any additional evidence concerning the appropriate rate of interest, other than the mere allegations in his amended answer, summary judgment in the FDIC's favor was appropriate on this issue.

For the foregoing reasons, the judgment of the district court is affirmed.

---

**6.** Although in his brief Turner refers to this as a "usury" defense, the relevant paragraphs in Turner's amended answer fail to mention usury,

but rather contend that the FDIC could not have charged such an interest rate in good faith.