**FEDERAL DEPOSIT INSURANCE CORP., Plaintiff-Appellee,**

v.

**W.T. LANGLEY and Mary Ann Grimes Langley, Defendants-Appellants.**

**W.T. LANGLEY and Mary Ann Grimes Langley, Plaintiffs-Appellants,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant-Appellee.**

**No. 85–4549.**

United States Court of Appeals, Fifth Circuit.

June 25, 1986.

See also 5th Cir., 792 F.2d 547.

William C. Shockey, McCollister, McCleary, Fazio & Holliday, Baton Rouge, La., for defendants-appellants.

Robert Pass, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Mark A. Brown, Tampa, Fla., Kantrow, Spaht, Weaver & Blitzer, David S. Rubin, Baton Rouge, La., for plaintiff-appellee.

Before WISDOM, REAVLEY, and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge:

W.T. and Mary Ann Grimes Langley (the "Langleys") appeal from the district court's summary judgment, pursuant to Fed.R.Civ.P. 54(b), in favor of the Federal Deposit Insurance Corporation ("FDIC"). Holding that the district court correctly applied the statutory safeguards accorded the FDIC, this Court affirms.

## I. BACKGROUND

The facts of this case arise out of the Langleys' purchase of a farm (the "Melville Property") in Point Coupee Parish, Louisiana, from Leenerts Farms, Inc. ("Leenerts"). Planters Trust & Savings Bank

("Planters") had made previous loans to the prior owners of the Melville property. These loans were in default. Roy Caughfield, who was then president of Planters, sought to extricate Planters from these defaulted loans. Assisted by Elmer Landry (who was, at that time, president of the Federal Land Bank Association of Opelousas), Caughfield arranged financing through Planters to assist the Langleys in the purchase of the Melville property. On October 3, 1980, a purchase agreement was executed by W.T. Langley and Leenerts. On December 19, 1980, the Langleys acquired the Melville property. Financing for the purchase was provided to the Langleys by the Federal Land Bank in the amount of $1.35 million secured by a first mortgage on the property,[1] and by Planters in the amount of $450,000.00, secured by a collateral mortgage in the amount of $500,-000.00 on the property. The balance owed on the Planters note was renewed on January 27, 1982, and again on March 8, 1982.

The Langleys executed a promissory note, mortgage, and personal guaranties of their obligation to Planters. The promissory note, mortgage, and guaranties each contained unconditional promises by the Langleys to be fully obligated and liable for payment of the debt.

On September 26, 1983, Planters sued the Langleys for nonpayment. The Langleys, in turn, sued Planters, Caughfield, and Landry in federal district court. The two suits were consolidated in federal district court.

Despite the relatively unconditional nature of the Langleys' obligations as stated in the note and guaranties, the Langleys asserted, as a defense to the Planters' suit on the note, that Caughfield had represented to the Langleys that their obligations would be much less onerous. The Langleys alleged (and for purposes of the summary judgment motion, the district court accepted as true) that Planters made certain representations that the Langleys considered material to their entering the loan. These representations included:

(1) that the Langleys would have no personal liability on the loans and guaranties;

(2) that no payment would be due until the property was resold;

(3) that the Langleys would be provided a purchaser for the property to be resold;

(4) that the Langleys would realize a large profit by reselling the property;

(5) that the Melville property consisted of 1,628.4 acres;

(6) that the Melville property included 400 mineral acres;

(7) that there were no mineral leases on the property; and

(8) that the purchase price would be 100 percent financed.

On appeal the Langleys do not contend, and this Court's examination of the record has not found, that these alleged warranties or loan terms were contained in the promissory note, guaranty, or mortgage executed by the Langleys in their dealings with Planters.

On May 18, 1984, the Commissioner of Financial Institutions for the State of Louisiana declared Planters to be in an unsafe and unsound financial condition, closed Planters, and took possession of its books, property, and affairs. The FDIC, in its capacity as a receiver, was appointed receiver for Planters. The FDIC as receiver, pursuant to court order, transferred the Langley note to the FDIC acting in its corporate capacity. The FDIC was then substituted for Planters[2] and moved for summary judgment against the Langleys on their liability on the Planters note. The district court granted the motion for summary judgment. *Planters Trust & Savings Bank v. Langley*, 615 F.Supp. 749 (W.D.La.1985).

1. The Federal Land Bank note is discussed in the companion appeal. *See FDIC v. Langley*, 792 F.2d 547 (5th Cir.1986).

2. The FDIC also appeared in the consolidated proceedings as receiver for Planters. On this appeal, however, the FDIC appears only in its corporate capacity.

In its opinion, the district court held that the federal statutory protections surrounding the FDIC, *see* 12 U.S.C. § 1823(e), precluded the assertion of the Langleys' defense that the loan documents did not fully set forth the understandings between the Langleys and Planters. 615 F.Supp. at 751. On appeal, the Langleys concede that many of the alleged misrepresentations, when considered separately, cannot be asserted against the FDIC under 12 U.S.C. § 1823(e). These conceded defenses include such major misrepresentations as the nonrecourse nature of the loan, the promise to find a purchaser, and the representation that no payments would be demanded until the reselling. However, the Langleys contend that others of the alleged misrepresentations, when considered separately, lie outside section 1823(e) and may be asserted against the FDIC since the FDIC obtained the note with actual knowledge of these alleged misrepresentations.[3] These misrepresentations concern the amount of acres in the Melville property and its mineral rights.

After thoroughly examining the Langley's arguments, and the policies and jurisprudence surrounding section 1823(e), we conclude that the district court correctly held that the FDIC is entitled to summary judgment.

## II. DISCUSSION

Both Congress and the federal courts have recognized the paramount importance of the FDIC in stabilizing and protecting the nation's banking system. *See* S.Rep. No. 97–536, 97th Cong., 2d Sess. 3–4, *reprinted in* 1982 U.S.Code Cong. & Ad.News 3054, 3056–57; *FDIC v. Castle,* 781 F.2d 1101, 1106 (5th Cir.1986). Thus, the Supreme Court, originally as a matter of federal common law, determined that a maker of a promissory note is estopped from asserting against the FDIC that the maker and the failed bank agreed not to call the note for payment. *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62

S.Ct. 676, 86 L.Ed. 956 (1942). Following the Supreme Court's creation of such protections, Congress enacted statutory protections in favor of the FDIC and provided that:

(e) **Agreements against interests of Corporation**

No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the assert by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

12 U.S.C. § 1823(e). At least one of the several salutary purposes underlying section 1823(e) is to ensure that the FDIC may rely on the books and records of an insured institution by requiring that material agreements concerning a loan transaction be set forth in the bank's records. *FDIC v. Merchants National Bank of Mobile,* 725 F.2d 634, 638 (11th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 114, 83 L.Ed.2d 57 (1984). The reason for such a requirement is fundamental to the banking system. If banks and borrowers were allowed to keep material terms of their transaction oral, then the FDIC's examiners could not adequately assess a bank's strength. Moreover, the FDIC, without this vital information contained in a failed bank's records, would be unable to fully discharge its duty of determining what course the FDIC should follow in dealing with a failed bank's assets. *See id.* at 638 (describing FDIC options of liquidating a failed bank

---

**3.** The FDIC assumes arguendo, and for purposes of the appeal from summary judgment only, that it acquired the Langleys' obligation with actual knowledge of their defenses.

or arranging a "purchase and assumption" transaction and emphasizing the importance of accurate bank records in making determination). In order to promote this sound policy, "[t]he statute and the cases only require that the obligor lend himself 'to a scheme or arrangement whereby the banking authority on which the FDIC relied ... was or was likely to be misled.'" *Chatham Ventures, Inc. v. FDIC*, 651 F.2d 355, 361 (5th Cir.1981) (quoting *D'Oench*, 315 U.S. at 460, 62 S.Ct. at 681), *cert. denied*, 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982). Further, the courts have held that under section 1823(e) and *D'Oench*, the obligor's intent in deceiving bank examiners or in creating incomplete records is immaterial; rather, "[t]he statute, by its terms does not require that the obligor lend himself to a deceptive scheme in the sense of participating with culpability in a fraud." *See Chatham Ventures, Inc.*, 651 F.2d at 361. *See also FDIC v. First National Finance Co.*, 587 F.2d 1009, 1012 (9th Cir.1978).[4] To further secure this protection, the FDIC's knowledge (whether actual or constructive) of the alleged defense is likewise immaterial under section 1823(e). *See FDIC v. de Jesus Velez*, 678 F.2d 371, 375 (1st Cir.1982). *See also FDIC v. Investors Associates X. Ltd.*, 775 F.2d 152, 155–56 (6th Cir.1985).

■ Turning from these principles to the facts of the instant case, it cannot be gainsaid that the Langleys and Planter withheld material terms from the eyes of federal examiners. Indeed, the absence of such terms from Planters' loan files as to the alleged nonrecourse nature of the loan and the deferral of all payments until the property was resold, effectively rendered what would appear to an objective observer to be a sound loan into one of highly questionable, if not minimal, value. It is clear that this total oral side agreement is an "agree-

ment which tend[s] to diminish ... the ... interest of the [FDIC]." Thus, the Langleys clearly did not comport with the dictates of section 1823(e) and its predecessor, *D'Oench*. Despite the critical importance of these alleged loan terms, they were not included in the loan documents available to bank examiners. By not insisting that Planters' promises and agreements be included in the loan documents—assurances which the Langleys concede go to the heart of their loan transaction—the Langleys lent themselves to a loan transaction that withheld the key aspects of their loan transaction from bank regulators. As this Court has noted, "The language of the statute is all encompassing; any agreement is subject to the statute if it tends to defeat or diminish FDIC's rights in an asset purchased under authority of § 1823." *FDIC v. Hoover-Morris Enterprises*, 642 F.2d 785, 787 (5th Cir.1981).

■ Recognizing this strong authority against what might otherwise be their key defenses, the Langleys seek to have this Court focus instead on Planters' alleged misrepresentations concerning the property to be purchased with the loan proceeds. The Langleys attempt to rely on *Gunter v. Hutcheson*, 674 F.2d 862 (11th Cir.), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). In *Gunter*, the obligors had borrowed money from the bank to buy stock in an institution affiliated with the lender. In the course of the transaction, the bank officials alleged certain misrepresentations regarding the financial status and activities of the lending bank and the affiliated institution. *See Gunter v. Hutcheson*, 492 F.Supp. 546, 549 (S.D.Ga. 1980). With one relatively minor exception, the borrowers did not assert any misrepresentation regarding the loan terms. Given this, the district court held that, while the

***

4. Although the result may at times seem inconsistent, courts have been most hesitant to ignore the FDIC's protections simply because officers of the failed bank were more at fault. *See, e.g., FDIC v. TWT Exploration Co.*, 626 F.Supp. 149, 156 (W.D.Okla.1985). As the court in *FDIC v. First Mortgage Investors*, 485 F.Supp. 445, 454 (E.D.Wis.1980) noted: "It is clear from the [Su-

preme] Court's holding in *D'Oench* and the Congressional policy expressed in section 1823(e), that those doing business with federally insured banks should avoid secret oral agreements. Failure to do so exposes the borrower to the risk that the rights provided by the [oral] agreement will be unavailable."

representations could be deemed "agreements" within section 1823(e), they did not fall within the proscription of the statute. The Georgia district court reasoned that this was so because the obligors were not seeking to alter the terms of the written documents by the terms of an undisclosed and oral arrangement but instead were asserting that the written documents themselves were invalid because of the underlying factual misrepresentation. 492 F.Supp. at 553. The Eleventh Circuit followed this analysis on appeal. 682 F.2d at 867. Importantly, both the district court and the Eleventh Circuit held that summary judgment was nevertheless appropriate for the FDIC since the district court and the Eleventh Circuit held that the FDIC was protected by federal common law.[5]

In discussing *Gunter*, courts in dictum have attempted to separate the Eleventh Circuit's analysis into two categories: (1) "promissory" fraud (i.e., an oral promise by the bank to perform a duty in connection with the execution of a note that the bank does not intend to perform) which may *not* be asserted against the FDIC; and (2) "factual" fraud (i.e., a factual misrepresentation by the bank not involving the undertaking of any contractual duty) which *may* be asserted against the FDIC. *See FDIC v. Hatmaker*, 756 F.2d 34, 36–37 (6th Cir. 1985) (dictum).

Relying on *Gunter*, the Langleys assert that the misrepresentations regarding the land (e.g., surface and mineral acreage) are "factual" misrepresentations and that section 1823(e) does not apply. The Langleys' suggested mechanical approach, however, ignores the fact that the Langleys, in doing so, are attempting to assert a part of their total side agreement to vary the terms of their loan. In the instant case, the Langleys and Planters *did* enter into a side arrangement which was not disclosed in the loan papers. Moreover, the Langleys attempt to rely on various parts of that undisclosed arrangement to vary and add

terms to the loan documents they executed. The Langleys/Planters' undisclosed side agreement involved not only promises regarding the borrowing of money but also the bank's furnishing the property to be bought with the loan proceeds. As part of this undisclosed arrangement, Planters made certain misrepresentations regarding the loan terms (e.g., nonrecourse nature of the loan) and the property to be purchased (e.g., surface and mineral acreage). Despite the critical importance of these oral warranties, they were not disclosed in the executed loan documents (nor do these documents indicate that Planters was so involved in the land purchase).

Thus, to allow the Langleys to shift the focus of their defense in the instant case would create an unacceptable "end run around § 1823(e)." *FDIC v. Lattimore Land Corp.*, 656 F.2d 139, 146 n. 13 (5th Cir.1981). As the district court in the instant case aptly noted:

> [W]hat becomes decisive for this Court is the clear policy of Congress to assist the FDIC in restoring stability after a bank failure. Permitting "end-runs" around § 1823(e) would not aid the FDIC in its efforts to avert local—and possibly broader—crises stemming from bank failures.

*Langley*, 615 F.Supp. at 751. Thus, we hold that the Langleys' defenses, which emanate from their alleged agreement having the effect of misinforming the FDIC, are barred by the FDIC's statutory protections. *See FDIC v. de Jesus Velez*, 678 F.2d at 375. *See also Investors Associates X.*, 775 F.2d at 155–56; *FDIC v. MM & S Partners*, 626 F.Supp. 681 (N.D.Ill.1985).

Accordingly, the judgment of the district court is

AFFIRMED.

---

5. Given our disposition of the instant case, which rests on § 1823(e), we do not express comment on the scope of federal common law. Nor do we imply our approval of *Gunter's* analysis of § 1823(e); we hold only that the Eleventh Circuit's analysis of § 1823(e) should not be applied to the instant case.