**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 20, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

FEDERAL DEPOSIT INSURANCE
CORPORATION, as Receiver of First
State Bank of Altus, Altus, Oklahoma,

    Plaintiff-Counter-Defendant-Appellee,

v.

MARK ARCIERO; WILLIAM
NEWLAND; THOMPSON-DODSON
FARMS, LLC; KEITH DODSON;
GERALD RAY SMITH,[*]

    Defendants-Counter-Claimants-
Appellants.

No. 12-6287

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 5:11-CV-00686-M)**

---

Todd Taylor, Taylor & Strubhar, P.C., (Larry D. Derryberry and Rachel R. Shephard,
Derryberry & Naifeh, LLP, with him on the briefs), Oklahoma City, Oklahoma, for
Defendants – Counter-Claimants – Appellants.

---

[*] The appeal is abated as to Mark Arciero and Gerald Ray Smith because they are in
bankruptcy proceedings.

David L. Bryant, GableGotwals, Tulsa, Oklahoma, (John Henry Rule and Barabara M. Moschovidis, GableGotwals, Tulsa, Oklahoma, and Leslie L. Lynch, GableGotwals, Oklahoma City, Oklahoma, with him on the brief), for Plaintiff - Counter-Defendant – Appellee.

---

Before **HARTZ, O'BRIEN,** and **TYMKOVICH,** Circuit Judges.

---

**HARTZ**, Circuit Judge.

---

In an effort to save Quartz Mountain Aerospace, some of its investors and directors took out large loans from First State Bank of Altus (the Bank) for the benefit of the company. When the Bank failed in 2009, the Federal Deposit Insurance Corporation (FDIC) took over as receiver and filed suit to collect on the loans. This appeal concerns the challenge to those collection efforts by four of those liable on the notes (Borrowers). Borrowers raised affirmative defenses to the FDIC's claims and brought counterclaims, alleging that the Bank's CEO had assured them that they would not be personally liable on any of the loans. The United States District Court for the Western District of Oklahoma granted summary judgment for the FDIC because the CEO's alleged promises were not properly memorialized in the Bank's records as required by 12 U.S.C. § 1823(e), a provision of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183 (codified in scattered sections of 12, 18 & 31 U.S.C.).

2

Borrowers appeal on two grounds:  (1) that the district court should not have granted summary judgment before allowing them to conduct discovery, and (2) that the district court should have set aside the summary judgment because they presented newly discovered evidence of securities fraud by the Bank.  We affirm the judgment below.  Borrowers did not support their request for discovery with any showing that discovery could lead to evidence that would satisfy the requirements of § 1823(e); and their new "evidence" was not admissible evidence and related to a legal theory that Borrowers could have raised—but did not raise—before.

I.      BACKGROUND

In 2008 the Bank's CEO, Paul Doughty, asked Borrowers and others to take out and guarantee large loans whose principal purpose was to invest money in Quartz Mountain Aerospace so it could make payments on its loans from the Bank and stay in business.  Three of the Borrowers—Mark Arciero, William Newland, and Thompson-Dodson Farms, LLC—signed separate $2.5 million notes; the fourth, Keith Dodson, did not take out his own loan but guaranteed the Thompson-Dodson Farms note.

Doughty prepared a credit memorandum that accompanied each promissory note.  It described where the loan proceeds would go, including that some of the funds would be used to purchase life-settlement contracts that would serve as collateral for the loans.[1]

---

[1] Life-settlement contracts allow an investor to purchase a third party's life-insurance policy.  The investor becomes responsible for premium payments and collects benefits

Continued . . .

The memorandum stated that because of those contracts the "proposed loan can be repaid in full without the sale of outside assets," Aplt. App., Vol. II at 268, and that "the credit risk of advances under this line is fully assured by the atomized life insurance policies used as collateral," *id.* at 270. Borrowers claim that the credit memorandum and Doughty's assurances caused them to believe that the loans would not expose them to any personal liability or financial risk.

On July 31, 2009, the Bank was closed by the Oklahoma State Banking Department, and the FDIC was appointed as receiver. The FDIC filed suit on June 16, 2011, to collect on the promissory notes. Borrowers did not dispute that they had not repaid the loans, but asserted that they had no obligation to do so because Doughty's representations to them constituted fraudulent inducement. They also brought counterclaims alleging that the Bank committed fraud; that Doughty breached his fiduciary duties; that Doughty failed to exercise reasonable care; that the Bank breached the implied covenant of good faith and fair dealing; that the FDIC had impaired Borrowers' collateral; and that the Bank, Doughty, and the FDIC violated the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968.

The FDIC moved for summary judgment, arguing that what Doughty told Borrowers was irrelevant because § 1823(e) precludes the use of oral commitments as defenses to FDIC claims. Borrowers nevertheless submitted affidavits saying that they

---

when the insured dies. Policies are generally purchased from individuals who are 65 years or older, with life expectancies of 3 to 12 years.

had been told by Doughty that they would have no personal liability and that the loans would be fully collateralized. They also requested a deferral of the ruling or denial of summary judgment to allow for discovery. The district court rejected the request for delay, saying that further discovery would not be helpful because the FDIC had already provided Borrowers and the court with the only documents necessary to rule on the FDIC's motion, such as the Bank's loan files and the minutes of the board of directors.

The district court then granted summary judgment. It held that Borrowers had "breached their obligations under the promissory notes" and that all their affirmative defenses were barred by § 1823(e). Aplt. App., Vol. II at 342. It also dismissed Borrowers' counterclaims because (1) the claims based on prereceivership conduct had not been administratively exhausted, (2) Borrowers had conceded their impairment-of-collateral claim by not challenging the FDIC's argument that Oklahoma does not recognize such a claim, and (3) federal agencies are not subject to civil RICO liability.

A little over a month later, the Oklahoma Department of Securities opened an investigation into whether the Bank, Doughty, or Altus Ventures, LLC (an affiliate of the Bank) had sold unregistered securities, including the life-settlement contracts associated with the loans in this case. Borrowers moved for reconsideration of the order granting summary judgment on the theory that the Department's investigation was newly discovered evidence that could support an affirmative defense not barred by § 1823(e). The district court denied the motion because the newly discovered evidence was "merely cumulative of other evidence that [Borrowers] had at the time of the briefing on [the

summary-judgment] motion." Aplt. App., Vol. II at 481. It noted that Borrowers had previously known of (1) the credit memorandum prepared by Doughty and (2) an FDIC publication that warned of investor risks inherent in life-settlement contracts, discussed the applicability of federal securities laws to such contracts, and included a case study describing how the use of life-settlement contracts as loan collateral contributed to a community bank's failure. *See id.* The court also said that because Borrowers already "could have, and perhaps should have, raised the issue of whether the loans were unregistered securities and, thus, were not agreements and were not subject to § 1823[,] [Borrowers] may not raise this issue for the first time in a motion for reconsideration." *Id.* at 482.

## II. DISCUSSION

### A. Section 1823(e)

When the FDIC tries to collect on promissory notes acquired from a failed bank, it regularly confronts defenses that "involve claims of misrepresentation or 'secret agreements' between the bank and the obligor that are not present on the face of the asset itself." *FDIC v. Oldenburg*, 34 F.3d 1529, 1550 (10th Cir. 1994). The FDIC could be handicapped in litigating such claims because its personnel lack first-hand knowledge of the relevant events, and those who would have such knowledge—the failed bank's directors, officers, and employees—often have nothing personally at stake while their loyalties may be to the bank customers rather than to the FDIC. "[T]o protect the FDIC

6

and the funds it administers," *id.*, strict statutory requirements must be satisfied before any agreement can limit the liability of a borrower or guarantor to the FDIC:

> No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the [FDIC] unless such agreement—
> (A) is in writing,
> (B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
> (C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
> (D) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e)(1). The Supreme Court has read the word *agreement* broadly in interpreting this provision. *See Langley v. FDIC*, 484 U.S. 86, 92–93 (1987). When a party raises an affirmative defense based on an agreement with the bank, it has the burden of showing that the agreement meets the requirements of § 1823(e)(1). *See Oldenburg*, 34 F.3d at 1551.

With this statutory context in mind, we turn to Borrowers' two issues on appeal.

## B. Additional Discovery

Borrowers argue that the district court erred when it denied their motion under Fed. R. Civ. P. 56(d) to delay ruling on the FDIC's motion for summary judgment until discovery could be conducted. Rule 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to

7

justify its opposition [to a motion for summary judgment], the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d) (until December 2010, Rule 56(f)). The party requesting additional discovery must present an affidavit that identifies "the probable facts not available and what steps have been taken to obtain these facts. The nonmovant must also explain how additional time will enable him to rebut the movant's allegations of no genuine issue of material fact." *Trask v. Franco*, 446 F.3d 1036, 1042 (10th Cir. 2006) (brackets, citation, and internal quotation marks omitted). We review a district court's denial of a Rule 56(d) motion for abuse of discretion. *See id.* We will not reverse unless the district court's decision to deny discovery "exceed[ed] the bounds of the rationally available choices given the facts and the applicable law in the case at hand." *Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1096 (10th Cir. 2010) (internal quotation marks omitted).

Borrowers have not identified any documents that discovery could uncover that would establish a defense satisfying § 1823(e). To prove an agreement limiting their liability, Borrowers would have to produce (1) a written agreement executed by the Bank and one of the Borrowers and (2) Bank minutes approving the agreement. *See* 18 U.S.C. § 1823(e)(1). But no Borrower attested to signing such an agreement or gave any reason to believe that such an agreement existed. And Borrowers do not claim that they are missing any Bank minutes. Speculation cannot support a Rule 56(d) motion.

8

Borrowers state in their opening brief that they have identified people who "could and likely would provide evidence which would ultimately bring this case outside of 12 U.S.C. § 1823(e)." Aplt. Br. at 18. But the brief does not go on to explain what that evidence might be or how the evidence would create a defense not governed by § 1823(e). Indeed, the quoted sentence is the only reference to § 1823(e) in the opening brief's argument on the Rule 56(d) issue. Such an undeveloped assertion does not suffice to preserve an issue for review. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief."). And the slightly more developed argument in Borrowers' reply brief comes too late. *See Cahill v. Am. Family Mut. Ins. Co.*, 610 F.3d 1235, 1239 (10th Cir. 2010) ("We do not address arguments first raised in [a] reply brief.") We also note that Borrowers apparently did not support their Rule 56(d) request in district court with a claim that they may have a defense not controlled by § 1823(e); they do not point to any pleading where they raised such a claim, nor have we found any discussion of such a claim in the Rule 56(d) pleadings. *See Tele-Communications, Inc. v. Comm'r*, 104 F.3d 1229, 1232 (10th Cir. 1997) ("Generally, an appellate court will not consider an issue raised for the first time on appeal.") We hold that the district court did not abuse its discretion in denying the request for Rule 56(d) relief.

Borrowers devote a section of their brief to the proposition that summary judgment on their affirmative defenses was improper. But their only argument against

9

the summary judgment is that their Rule 56(d) motion was denied.  We understand the argument as merely stating that if we agree with them on the Rule 56(d) motion, the summary judgment must be set aside.  Because we reject their Rule 56(d) argument, we need say no more on this issue.

### C.  Newly Discovered Evidence

Borrowers argue that the district court erred in denying their motion for reconsideration based on newly discovered evidence.  A party can seek relief based on newly discovered evidence under either Fed. R. Civ. P. 59(e) or 60(b)(2).  We have held that relief from judgment under Rule 60(b)(2) is available if:

> (1) the evidence was newly discovered since the trial; (2) the moving party was diligent in discovering the new evidence; (3) the newly discovered evidence was not merely cumulative or impeaching; (4) the newly discovered evidence is material; and (5) . . . a new trial with the newly discovered evidence would probably produce a different result.

*Dronsejko v. Thornton*, 632 F.3d 658, 670 (10th Cir. 2011) (brackets and internal quotation marks omitted).  The required showing is the same whether judgment was entered after a trial or on a motion for summary judgment.  *See id.* ("Of course, in this case the Plaintiffs sought relief from an order dismissing the case, not from the result of a trial—but the required showing under Rule 60(b)(2) remains the same.").  We have often expressed the requirements for relief under Rule 59(e) as including only the first two of the above requirements.  *See Somerlott v. Cherokee Nation Distribs., Inc.*, 686 F.3d 1144, 1153 (10th Cir. 2012) ("Where a party seeks Rule 59(e) relief to submit additional evidence, the movant must show either that the evidence is newly discovered or if the

10

evidence was available at the time of the decision being challenged, that counsel made a diligent yet unsuccessful effort to discover the evidence." (brackets and internal quotation marks omitted)). But we have also recognized in the Rule 59(e) context that the newly discovered evidence "must be of such a nature as would probably produce a different result," *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1213 (10th Cir. 2012) (internal quotation marks omitted), and it is well-settled that the requirements for newly discovered evidence are essentially the same under Rule 59(e) and 60(b)(2). *See* 11 Charles A. Wright, et al., Federal Practice and Procedure § 2859, at 387 (2012) ("The same standard applies to motions on the ground of newly discovered evidence whether they are made under Rule 59 or Rule 60(b)(2)." (footnote omitted)). We review the district court's decision under either rule for abuse of discretion. *See Computerized Thermal Imaging, Inc. v. Bloomberg, L.P.*, 312 F.3d 1292, 1296 n.3 (10th Cir. 2002). Accordingly, we need not address the parties' dispute about which rule Borrowers made their motion under.

Borrowers' alleged newly discovered evidence is that the Oklahoma Department of Securities opened an investigation into the Bank, its affiliate Altus, and Doughty for selling unregistered securities, including the life-settlement contracts used to secure the loan to Borrowers. According to Borrowers, this evidence supports claims and defenses against the FDIC that would not be barred by § 1823(e) because they are based on securities violations rather than agreements with the Bank.

11

Several of our fellow circuits have rejected such attempts to get around § 1823(e). *See FDIC v. Giammettei*, 34 F.3d 51, 58 (2d Cir. 1994) (defenses based on the violation of federal securities laws are subject to the requirements of § 1823(e)); *Dendinger v. First Nat'l Corp.*, 16 F.3d 99, 102 (5th Cir. 1994) ("[A]n oral misrepresentation by a lender to a borrower, whether in violation of federal securities law or not, constitutes an unwritten 'agreement' that does not bind the FDIC under [§ 1823(e)]."); *FDIC v. Investors Assocs. X, Ltd.*, 775 F.2d 152, 156 (6th Cir. 1985). *But see Adams v. Zimmerman*, 73 F.3d 1164, 1168–69 (1st Cir. 1996) (claim based on violation of state securities-law registration requirement does not rest on agreements subject to § 1823(e)). We need not reach that issue, however, because evidence of the investigation does not satisfy the requirements for newly discovered evidence.

Newly discovered evidence must be *admissible* evidence to support relief under Rule 59 or 60(b)(2). *See Goldstein v. MCI WorldCom*, 340 F.3d 238, 257 (5th Cir. 2003) (it is "self evident" that newly discovered evidence must "be both admissible and credible" (internal quotation marks omitted)); 11 Charles A. Wright, et al., *supra*, § 2808, at 117 ("Newly discovered evidence must be admissible and probably effective to change the result of the former trial." (footnote omitted)). The existence of an investigation, however, is not admissible evidence of alleged misconduct. The purpose of an investigation is to determine whether misconduct has occurred. Evidence uncovered by the investigation might be admissible, but Borrowers point to no such evidence. At most, the opening of an investigation alerted Borrowers to the possibility that securities laws

12

governed their transactions with the Bank and that they could bring claims under those laws. But learning of a new legal theory is not the discovery of new *evidence*. Moreover, as noted by the district court, Borrowers had previously been alerted to the possible availability of the theory. Before the FDIC moved for summary judgment, Borrowers had a credit memorandum describing the life-settlement contracts associated with their loans and an FDIC publication that included an article listing the dangers of life-settlement contracts, which mentioned the applicability of federal securities laws.

We conclude that the district court did not abuse its discretion in denying Borrowers' motion to set aside the summary judgment because of alleged newly discovered evidence.

## III. CONCLUSION

We AFFIRM the judgment below.