ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of - | ) |
| | ) |
| Odyssey International, Inc. | )    ASBCA Nos. 62062, 62279 |
| | ) |
| Under Contract No. W912DR-15-C-0038 | ) |

APPEARANCES FOR THE APPELLANT:     Brian C. Johnson, Esq.
                                         H. Burt Ringwood, Esq.
                                         Spencer W. Young, Esq.
                                         Ian L. Quiel, Esq.
                                           Strong & Hanni
                                           Salt Lake City, UT

APPEARANCES FOR THE GOVERNMENT:    Michael P. Goodman, Esq.
                                           Engineer Chief Trial Attorney
                                           Adam J. Kwiatkowski, Esq.
                                           Engineer Trial Attorney
                                           U.S. Army Engineer District, Baltimore

OPINION BY ADMINISTRATIVE JUDGE D'ALESSANDRIS
ON THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT

      In August 2015, the United States Army Corps of Engineers (USACE or the government) awarded appellant, Odyssey International Inc. (Odyssey) a contract for construction of a building at the Letterkenny Army Depot in Chambersburg, Pennsylvania. The contract called for the use of "micropiles"[1] in the foundation of the building. While the contract line item (CLIN) described the work as a fixed-price line item, the contract also contained language suggesting that the micropiles were being bid at a per-unit rate. In a modification, the government compensated Odyssey for 8 of the 20 claimed additional micropiles. Odyssey additionally asserted entitlement to delay costs, but was not able to reach agreement with the government. The government issued a unilateral modification (Modification No. 3) granting Odyssey some additional time on the contract. At the end of performance, the parties executed a modification (Modification No. 9) that resolved several unrelated issues, and also converted Modification No. 3 to a bilateral modification. Modification No. 9 additionally contained a general release of claims by Odyssey.

---

[1] Micropiles are a building foundation system that involves drilling small diameter holes into bedrock and inserting grout into any voids in the rock before inserting a metal pole and casing.

Odyssey filed a request for equitable adjustment (REA) in August 2018, seeking additional costs related to the micropiles. In October 2018, the government denied the REA on the basis that Odyssey had released those costs in Modification No. 9. An Odyssey employee responded that the release in Modification No. 9 seemed to be a "trick, trap or typo," a characterization disputed by the government. Odyssey subsequently filed a claim in January 2019, which was denied by the USACE contracting officer in an April 2019, final decision. Odyssey appealed the contracting officer's final decision to the Board, which docketed the case as ASBCA No. 62062.

In July 2019, the government filed a motion to dismiss Odyssey's appeal for lack of subject matter jurisdiction, contending that the claims had not been submitted to the contracting officer. We granted the government's motion, in part, on January 28, 2020. *Odyssey International Inc.*, ASBCA No. 62062, 20-1 BCA ¶ 37,510. In our opinion, we found jurisdiction to entertain portions of Odyssey's complaint that were the "same claim" as had been presented to the contacting officer. While the motion to dismiss was pending before the Board, Odyssey filed a second claim, incorporating the January 2019 claim by reference, and asserting some of the facts raised in Odyssey's complaint, but not previously presented to the contracting officer. Odyssey appealed the contracting officer's final decision denying that claim to the Board, where it was docketed as ASBCA No. 62279.

Now pending before the Board is the government's motion for summary judgment, and motion to dismiss, requesting that both appeals be denied based on the release contained in Modification No. 9. We agree that Odyssey released its claims in Modification No. 9. Odyssey opposes the motion for summary judgment alleging that there is a material factual dispute as to whether there was a meeting of the minds regarding the release in Modification No. 9, based solely on the email statement that the release "seem[s] to be a trick, trap or typo." We find that Odyssey has not demonstrated the existence of a material factual dispute. Odyssey additionally asserts that it requires discovery pursuant to Federal Rule of Civil Procedure (FED. R. CIV. P.) 56(d) to respond to the government's motion. We hold that Odyssey has not demonstrated that it would be able to defend against the entry of summary judgment if it obtained its requested discovery. Additionally, we reject Odyssey's claim for lost profits and its allegations regarding implied-in-fact contracts. Accordingly, Odyssey's appeals are denied.

<u>STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION</u>

I. <u>The Contract</u>

On August 13, 2015, the USACE issued invitation for bids W912DR-15-B-0009 for construction of the Component Rebuild Facility at the Letterkenny Army Depot in Chambersburg, Pennsylvania (R4, tab 38 at 1). The invitation for bids provided that the

2

building's foundation was to be supported by a series of narrow, underground, reinforced and grouted columns, drilled through soil and into competent bedrock, called "micropiles" (R4, tab 37 at 1569-81).

The invitation for bids included a price schedule with 17 contract line item numbers (CLINs), with CLIN 0007 being a fixed-price line item covering all costs relating to construction of the micropiles (R4, tab 38 at 4-7). Paragraph 1.4.1, entitled "General," of the "Measurement and Payment" section of the Micropile Specification, provides:

> All costs in connection with furnishing all materials, equipment, and performing all labor for the construction of the micropiles, . . . but exclusive of work covered by specific unit price items included herein shall be paid for as lump sum.

(R4, tab 37 at 1569-70). Similarly, paragraph 1.4.2, entitled "Rock Probe Holes for Micropile Pile Caps," of the "Measurement and Payment" section of the Micropile Specification, provides:

> Where inspection of rock quality is necessary beneath bond zone depths, the Contracting Officer will direct that a probe hole be performed. Since verification of competent bedrock . . . is the part of the Contractor's micropile design, payment for rock probing will be part of the lump sum. The contract lump sum price shall constitute full compensation for furnishing all plant, labor, equipment, materials, and supplies, grouting of rock probe holes and performing all operations required for the completion of all work specified in paragraph "Rock Probe Holes".

(R4, tab 37 at 1570). Paragraph 3.3.4, entitled "Grouting," of the "Micropile Installation" section of the Micropile Specification provides, in pertinent part, that "[n]o additional payments for excessive grout volumes will be made" (R4, tab 37 at 1579-80).

Paragraph 3.4.3, entitled "Rock Probe Holes," of the "Testing and Evaluation" section of the Micropile Specification provided that the rock probe costs were included in the micropile lump sum:

> Where inspection of rock quality is necessary beneath bond zone depths, the Contracting Officer will direct that a probe hole be performed. Since verification of competent

3

bedrock at all mirocpile [sic] locations, . . . is the part of the Contractor's micropile design, payment for rock probing will be included with the lump sum.

(R4, tab 37 at 1581). However, despite the language cited above providing that the micropiles were a fixed-price CLIN, the invitation for bids also included language consistent with a per-unit price at paragraph 1.4.1.3 "Criteria for Bidding" providing that:

For bidding purposes, *the contractor shall assusme [sic] that 2 micropiles will be installed at each pile cap*, with each micropile drilled to a depth of 10 feet into bedrock, with 15 feet of overburden soil.

(R4, tab 37 at 1570) (emphasis added).

In response to the invitation for bids, Odyssey submitted the lowest bid overall, including unawarded options, in the amount of $20,991,836.88. Odyssey bid $280,800 for CLIN 0007, covering the micropile portion of the project. (R4, tab 41 at 1) Contract No. W912DR-15-C-0038 was awarded to Odyssey on September 28, 2015. The amount of the contract at award was $14,674,642.56 (R4, tab 2 at 1-2). The value of CLIN 0007 of the contract was $280,800, the value of Odyssey's bid (*id.* at 9). Odyssey was given notice to proceed on October 21, 2015, and Odyssey acknowledged the notice on November 12, 2015. (R4, tab 42 at 1-2).

II. Odyssey's Micropile Design and Changes AB and AI

On February 22, 2016, Odyssey submitted its micropile design to the government for review and approval (R4, tab 3i at 1). By letter dated May 10, 2016, the government requested a proposal from Odyssey for "Change AB" representing "the net difference between the costs associated with the complete micropile foundation system and the costs associated with the 'Criteria for Bidding' identified in Specification Section 31 63 33" (R4, tab 44 at 2). By letter dated May 11, 2016, Odyssey proposed a contract modification in the amount of $512,162.74, and an additional 116 days, representing what it contends were its additional costs between the 80 micropiles in its submitted design and the 60 micropiles it contends were required by the criteria for bidding (R4, tab 45 at 1, 3). Odyssey's micropile design was approved on May 13, 2016, 81 days after submission. (R4, tab 3i at 1). The approved design called for eighty micropiles (R4, tab 3h at 1). The micropile preparatory meeting was held on June 17, 2016, and Odyssey's micropile subcontractor, Hillis-Carnes, completed construction of the micropiles on July 28, 2016 (R4, tab 47 at 33, 139).

4

By letter dated July 25, 2016, the Corps informed Odyssey that proposed Change AB, which would have compensated Odyssey for 20 additional micropiles, had been "cancelled due to an apparent misunderstanding of the contract scope-of-work" (R4, tab 51 at 1). The letter stated that the "Criteria for Bidding" language established that 72 micropiles were required per the invitation for bids (*id.*). By letter dated August 2, 2016, the government requested a proposal for "Change AI" for the design and installation of eight additional micropiles in the foundation (R4, tab 52 at 1-2).

On August 17, 2016, Odyssey responded with its proposal for Change AI in the amount of $76,992.15 and 2 additional days of performance time (R4, tab 53 at 1). By email dated August 18, 2016, the government proposed a modification in the amount of $54,800 and 4 additional contract days (R4, tab 16 at 2-3). By email dated August 31, 2016, Odyssey accepted the government's proposed modification of $54,800 and 4 additional days, noting that "[w]e will work the remainder of the cost through the [request for equitable adjustment] that the USACE requested in letter C-0015 (last paragraph)" (*id.* at 1).

On September 23, 2016, L. Blaine Hoopes, Odyssey's project manager, executed Modification No. A00002, which included Change AI, and adjusted the contract price by $54,800, for the installation of eight additional micropiles, and added four days to the contract's period of performance (R4, tab 17 at 2-3). The modification included the following closing statement:

> It is understood and agreed that this adjustment constitutes compensation in full for all costs, directly and indirectly attributable to the changes ordered herein, for all delays related thereto, and for performance of the changes within the time frame stated. In addition, the Contractor hereby releases the Government from any and all liability under this contract for further equitable adjustments attributable to such facts or circumstances giving rise to the changes ordered herein.

(R4, tab 17 at 3).

### III. Odyssey's January 2017 REA and Modifications 3 and 9

On January 23, 2017, Odyssey submitted a request for equitable adjustment (January 2017 REA) seeking additional costs in connection with construction of the micropiles (R4, tab 54). The "REA includes 116 days of project delay, grout overages for rock probing to obtain global stability, additional drilling depth, additional micropile depths and extended overhead" and sought $464,560.54 in "compensatory damages" and 77 days of compensable delay time (*id.* at 1, 11). The REA noted that

"[a]t this time the micropile work has been completed and Odyssey International will present the historical data that has led to the Request for Equitable Adjustment" (*id.* at 1). In an April 20, 2017 letter concerning the January 2017 REA, Odyssey's counsel represented that "Odyssey is certain that the REA is complete" (R4, tab 55 at 3). The same letter acknowledged that "Change AN" related to the January 2017 REA (*id.* at 1, 3). On May 17, 2017, the government issued Change AN on a unilateral basis. Change AN was titled "REA for Micropile Foundation System" (R4, tab 56 at 1). The scope of the change was:

> Provide all plant, labor, materials, and equipment necessary to perform the following work:
>
> Item 1- Provide a fifteen (15) calendar day compensable extension of the contract period of performance associated with the review period of RFI #0003, answered by the Government on 1/20/16.
>
> Item 2- Provide a twenty-one (21) calendar day compensable extension of the contract period of performance associated with the review period of the contractor's Micropile Design Submission, approved by the Government on 5/13/16.
>
> Item 3- Provide all compensation associated with the installation of 355.3 additional linear feet of Micropile to include a seven (7) calendar day compensable extension of the contract period of performance.
>
> Total compensation for this modification is $141,400.00 with an extension of the contract performance period of forty-three (43) calendar days.

(R4, tab 56 at 3). While it did not appear on the face of the modification, the administrative designation of Change AN as modification "A00003" was communicated to Blaine Hoopes of Odyssey on May 19, 2017 (app. supp. R4, tab 115 ("Your modification number is indeed 'A00003'.")).

On February 5, 2018, Mr. Hoopes executed Modification No. A00009 on behalf of Odyssey. The title of the modification was Change "BA Variation in Estimated Quantities" (R4, tab 58 at 1). The modification adjusted the quantities of three CLINs (0004, 0005, and 0006) not directly related to the micropiles (*id.* at 2). However, the modification included the following unambiguous closing statement and release language:

6

Modification A00003 [Change AN] effective 5/17/17 in the amount of $141,400.00 with an increase of forty-three (43) calendar days in the contract period of performance is hereby converted to a bilateral agreement.

It is understood and agreed that this adjustment constitutes compensation in full for all costs, directly and indirectly attributable to the changes ordered herein, for all delays related thereto, and for performance of the changes within the time frame stated. In addition, the Contractor hereby releases the Government from any and all liability under this contract for further equitable adjustments attributable to such facts or circumstances giving rise to the changes ordered herein.

(*Id.* at 3).

By letter dated August 30, 2018, Odyssey submitted a REA adjustment regarding the micropiles (R4, tab 59). On October 5, 2018, the government emailed a letter, dated October 2, 2018, denying the REA because Odyssey had released the micropile claims in Modification No. 9 (app. supp. R4, tab 127 at 1; tab 60). In an email dated October 10, 2018, Mr. Hoopes (who signed Modification No. 9 for Odyssey) wrote that:

[t]he second paragraph of the closing statement has nothing to do with the entirety of the mod presented to Odyssey by the USACE. This seem [sic] to be a trick, trap or typo. The purpose of that mod was clearly to withdraw from the contract the quantities of CLIN 4,5,&6 not execute a bilateral agreement for the Micropiles. We will address this with our legal team and proceed as directed by them.

(App. supp. R4, tab 127 at 1). That same day, the government responded:

I respectively [sic] disagree. There was no trick or typo and this agreement was discussed and approved by your signature on the SF30. The closing statement wrapped up all our previous agreements to try and wrap up and close out the project. This was also discussed in our meeting when Whitney, you, Barry, Jeff, and I met and agreed to extend time on the project.

7

We will await your review and response and proceed accordingly.

(*Id.*).  The parties have not identified in the record any further communications regarding the release language in Modification No. 9.

IV.  Odyssey's January 2019 Claim and Appeal

Odyssey, through counsel, submitted a certified claim dated January 8, 2019 (January 2019 Claim) alleging that it was entitled to an equitable adjustment in the amount of $651,099.13 and 357 additional days of delay (R4, tab 3a at 10).  Like the January 2017 REA, the January 2019 Claim demands "116 days of project delay, grout overages for rock probing to obtain global stability, additional drilling depth, additional micropile depths and extended overhead" (R4, tab 3a at 2).  The January 2017 REA and the January 2019 Claim also alleged that Odyssey was owed costs for 20 additional micropiles (R4, tab 3a at 8 ("Although the USACE accepted (8) additional micropiles they still refused payment for additional drill depths, additional probe hole and the additional cost associated with the overage in grout.  The USACE refused to compensate Odyssey for the (12) additional micropiles at the hold down locations.")).

In a final decision dated April 8, 2019, the government contracting officer denied the January 2019 Claim, noting that Odyssey's January 2017 REA covered the same subject matter as the January 2019 Claim, and that Change AN (Modification No. 3) and Modification No. A00009 precluded further government liability relating to the micropile work (R4, tab 1 at 33).  Odyssey appealed the contracting officer's final decision to the Board, which docketed the case as ASBCA No. 62062.  In its appeal, Odyssey indicated that the government owed Odyssey "at least $15,033,862 in consequential damages" relating to the government's failure to pay Odyssey's January 2019 claim (compl. ASBCA No. 62062, ¶ 123).

Odyssey placed on the record a June 3, 2019 letter from Mr. Stirling Broadhead of the Dale Barton Agency (app. supp. R4, tab 128).  In the letter, Mr. Broadhead explained the purported effect of the government's failure to pay Odyssey's January 2019 Claim on Odyssey's bonding capacity, opining that "[i]f you had the $651k of working capital in your company, that would have resulted in an additional nearly $23 million of bonding per year" (*id.*).  Mr. Broadhead's letter attributes the limitation of Odyssey's bonding capacity solely to the government's failure to pay the January 2019 claim (*id.*).

V.  The Government's July 2019 Motion To Dismiss And Odyssey's
    August 2019 Claim

On July 15, 2019, the government filed a motion to dismiss Odyssey's appeal for lack of subject matter jurisdiction, because Odyssey purportedly had not submitted its claims to the contracting officer for a final decision.  On January 28, 2020, the Board granted the government's motion in part, holding that Odyssey had presented the same claim with regard to the micropiles, but granting the government's motion with regard to Odyssey's new claims pertaining to consequential damages, contract withholding, and an alleged implied-in-fact contract regarding payment of invoices or the requirement that the government respond to requests for information within 14 days. *Odyssey*, 20-1 BCA ¶ 37,510 at 182,214.  While the government's motion to dismiss was pending before the Board, Odyssey filed a second certified claim, (August 2019 Claim) by letter dated August 14, 2019 (R4, tab 137).  The August 2019 Claim incorporates the January 2019 Claim, by reference (*id.* at 2).

The August 2019 Claim asserts that the government's failure to pay the January 2019 Claim led to Odyssey's loss of over $15 million in profits:

> The Government's refusal to pay Odyssey-- for work that was indisputably performed and inarguably performed well-- deprived Odyssey of the working capital crucial to its success.  This in turn had the foreseeable effect of undercutting Odyssey's bonding capacity, which deprived it of profits it would have otherwise received from contracts with the Government.  Through May 28, 2019, Odyssey lost $15,033,862 in profits because of the Government's breaches of the Contract (the "Damages").  The precise computation of the Damages is also enclosed.

(*Id.* at 3).  Odyssey asserted that its computation of $15 million in lost profits was "conservative" because it assumed a bonding capacity of 35 times its working capital, rather than the 50-fold multiple it had experienced over the past 15 years, and that the "conservative numbers" would account for the effect, if any, of other factors (*id.*).  The referenced damages calculation is a one-page document entitled "Affect [sic] of Diminishment of Working Capital" showing quarterly end dates in the left-hand column, followed by projected revenues, profits, and working capital (R4, tab 138 at 11; app. supp. R4, tab 133).

The August 2019 claim does not address the alleged requirement that the government respond to requests for information within a given time period (*see*, *Odyssey*, 20-1 BCA ¶ 37,510 at 182,213).  The contracting officer denied the

9

August 2019 claim in a decision dated November 15, 2019 (R4, tab 134). Odyssey appealed this decision to the Board, which docketed the case as ASBCA No. 62279.

On March 17, 2020, Odyssey filed its consolidated complaint in ASBCA Nos. 62062 and 62279 (compl.). The complaint alleges that Odyssey is owed compensatory damages in the amount of $651,099.13 (compl. ¶¶ 120-21). This is the same amount of compensatory damages asserted in the January 2019 claim (R4, tab 3a at 10). The complaint additionally suggests Odyssey is owed costs for additional micropiles (compl. ¶ 100). The complaint also alleges Odyssey is owed $15,033,862 in consequential damages (compl. ¶¶ 122-27). The complaint's cause of action number one, breach of express contract, identifies several bases for recovery, including: (1) failure to pay Odyssey for the alleged extra costs of the micropile design it approved under the "Specifications and Drawings for Construction" Clause, 48 CFR 52.236-21 and the "Changes" Clause, 48 CFR 52.243-4 (compl. ¶¶ 130-132); (2) breach of a separate contract by failing to pay Odyssey pursuant to its response to RFI 0004 and cancelled change "AB" (compl. ¶ 133); and, (3) frustration of Odyssey's performance by delaying the micropile work (compl. ¶ 134).

Odyssey additionally asserts breach of an implied-in-fact contract created by the government's response to RFI-0004 (compl. ¶¶ 137-38, 140), and the duty to respond to RFIs within fourteen (14) days (compl. ¶ 139). Finally, Odyssey alleges a breach of the implied covenant of good faith and fair dealing by failing to pay Odyssey for the costs of the micropile design and the delays that it caused (compl. ¶¶ 143-47).

VI. Odyssey's Savannah District Litigation

In addition to these appeals, Odyssey recently litigated a case at the Board with the USACE's Savannah District, in which Odyssey attempted to overturn a termination for default. *Odyssey International, Inc.*, ASBCA No. 62085 *et al.*, 21-1 BCA ¶ 37,861. The Board rejected Odyssey's argument that its inability to obtain bonding due to the criminal investigation of its chief financial officer was excusable as it was beyond Odyssey's control. *Id.* at 183,849. In the Savannah District appeal, Odyssey filed a letter from Mr. Broadhead in which he opined that the government's failure to pay the micropile claim was an issue Odyssey could overcome, and that the "primary reason" for Odyssey's inability to obtain bonding was an ongoing criminal investigation into the alleged procurement fraud by Odyssey's chief financial officer. (R4, tab 141 at 2). In a May 3, 2019 email to the government, filed in the Savannah District Case, Mr. Brad Larson, Odyssey's Chief Executive Officer, forwarded Mr. Broadhead's opinion, and additionally wrote that Odyssey had "cure[d]" the working capital problem, but that "[t]he more challenging obstacle . . . is the ongoing investigation of our former [chief financial officer]" (R4, tab 140 at 1). A month later, Mr. Larson provided a declaration in this appeal, dated June 24, 2019, opining that the government's failure to pay the micropile claim, and its effect on Odyssey's working capital, caused Odyssey to lose

approximately $15 million in profits, never mentioning the ongoing criminal matter (app. supp. R4, tab 129). In addition, in its opposition to the government's summary judgment motion in the Savannah District appeal, Odyssey argued that "Odyssey produced abundant evidence in these appeals showing that the Government's ongoing investigation was the primary reason it was unable to procure bonding for the contract" (R4, tab 142 at 11-12).

VII. The Government's Motion for Summary Judgment and Odyssey's Rule 56(d) Motion

On November 30, 2020, the government filed the pending dispositive motion in these appeals. The government's motion included a request that the Board stay discovery in this appeal pending resolution of the motion (gov't mot. at 1). In opposing the motion to stay discovery, Odyssey asserted that it required discovery to respond to the dispositive motion. By order dated January 5, 2021, the Board granted the government's motion staying discovery, but without prejudice to Odyssey making a motion pursuant to FED. R. CIV. P. 56(d). The order provided:

> To the extent Odyssey contends that certain of [its pending] discovery responses are necessary for it to respond to the government's motion for summary judgment, the appropriate method of obtaining that information is by motion pursuant to Rule 56(d). . . . However, rather than permitting all discovery, any discovery permitted pursuant to Rule 56(d) will be targeted to Odyssey's specific needs for responding to the government's motion. Moreover, Odyssey's motion must be supported by an affidavit or declaration specifying the reasons why it cannot present facts essential for justifying its opposition to the government's motion.

(Order dtd. Jan. 5, 2021). Despite the Board's guidance, Odyssey failed to support its Rule 56(d) request with an affidavit or declaration specifying the reasons why it was "unable to present facts essential" to defend against the government's motion. Instead, Odyssey presented the declaration of its counsel that the government had not responded to Odyssey's discovery requests (Declaration of Spencer W. Young, dated Jan. 13, 2021 (Young decl.) ¶¶ 4-5). The declaration additionally provided that one of the issues in the appeal was whether there was a meeting of the minds with regard to Modification No. 9 and asserts that: "[w]hen Odyssey learned the clause was in the modification, Odyssey immediately protested and insisted that was not its intent in signing the modification, claiming instead that it was a 'trick, trap or typo'" (id ¶ 8). The declaration further asserted that "Odyssey believes the release clause was fraudulently inserted by the Government, which would create a defense to Odyssey

11

being held to that release (if in fact there were held to be a meeting of the minds)" (*id.* ¶ 9). The declaration asserts that certain of its discovery requests are relevant to this issue (*id.* ¶¶ 10-11).

The Young declaration additionally refers to the issue regarding whether CLIN 0007 was a lump-sum line item, or was a design-build line item (*id.* ¶ 12). With regard to that issue, the declaration provides that: "Odyssey believes this question was raised by one of the other contractors during the prebidding inquiries" and contends that one of its discovery requests was relevant to this issue (*id.* ¶ 13). The declaration additionally addresses discovery that Odyssey contends is relevant to the government's purported obligation to respond to requests for information within 14 days (*id.* ¶¶ 14-15). Finally, the declaration provides: "[b]ased on the foregoing I believe that if the Government is ordered to respond to Odyssey's discovery requests in this appeal and Odyssey is allowed to conduct further discovery, it will yield information that will better enable Odyssey to defend against many of the issues the Government raises in its motion for summary judgment" (*id.* ¶ 16). The declaration does not assert that Mr. Young has personal knowledge of the Odyssey's negotiation of the release in Modification No. 9 or that he was in attendance during the pre-bid activities.

DECISION

I.  Standard of Review

We will grant summary judgment only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that may affect the outcome of the decision. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The moving party bears the burden of establishing the absence of any genuine issue of material fact, and all significant doubt over factual issues must be resolved in favor of the party opposing summary judgment. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390-91 (Fed. Cir. 1987). Once the moving party has met its burden of establishing the absence of disputed material facts, then the non-moving party must set forth specific facts, not conclusory statements or bare assertions, to defeat the motion. *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 626-27 (Fed. Cir. 1984). "A genuine issue of material fact arises when the nonmovant presents sufficient evidence upon which a reasonable fact finder, drawing the requisite inferences and applying the applicable evidentiary standard, could decide the issue in favor of the nonmovant." *C. Sanchez and Son, Inc. v. United States*, 6 F.3d 1539, 1541 (Fed. Cir. 1993).

The government's motion additionally seeks dismissal of Odyssey's second cause of action for lack of jurisdiction. For that portion of the motion, Odyssey bears the burden of proving the Board's subject matter jurisdiction by a preponderance of the evidence.

12

*Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988); *United Healthcare Partners*, *Inc.*, ASBCA No. 58123, 13 BCA ¶ 35,277 at 173,156. Pursuant to the Contract Dispute Act (CDA) 41 U.S.C. §§ 7101-09, a contractor may, "within 90 days from the date of receipt of a contracting officer's decision" under 41 U.S.C. § 7103, appeal the decision to an agency board. 41 U.S.C. § 7104(a). Our reviewing court, the United States Court of Appeals for the Federal Circuit, has held that CDA jurisdiction requires "both a valid claim and a contracting officer's final decision on that claim." *M. Maropakis Carpentry*, *Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010) (citing *James M. Ellett Constr. Co. v. United States*, 93 F.3d 1537, 1541-42 (Fed. Cir. 1996)).

II. <u>Application of The Summary Judgement Standard</u>

We evaluate motions for summary judgment in accordance with FED. R. CIV. P. 56. *See* Board Rule 7(c)(2); *Chugach Federal Solutions*, *Inc.*, ASBCA No. 61320, 19-1 BCA ¶ 37,314 at 181,495. Because resolution of the government's motion depends, in large part, on the non-movant's burden in opposing the motion, we cite the procedural rule, in relevant part:

> (a) Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.
>
> . . .
>
> (c) Procedures.
>
> (1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

13

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

. . .

(4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

(d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order.

FED. R. CIV. P. 56.

As these provisions appear to be a continuous source of confusion to parties litigating before the ASBCA, it is perhaps worth explaining the rule in simpler terms. A motion for summary judgment is a "put-up or shut-up" moment in litigation. *See, e.g. Johnson v. Cambridge Industries, Inc.*, 325 F.3d 892, 901 (7th Cir. 2003); *Weinstock v. Columbia University*, 224 F.3d 33, 41 (2d Cir. 2000). A motion for summary judgment differs from a motion to dismiss for failure to state a claim. A motion to dismiss for failure to state a claim can only be granted when the non-moving party cannot *allege* a set of facts that would support judgment in its favor. Thus, a non-moving party can defend against a motion to dismiss with unsworn statements in a complaint regarding what happened. However, the non-moving party responding to a motion for summary judgment *must* oppose the motion with citations to *record evidence sufficient to establish that there is a dispute regarding a material factual issue* – that is, a fact essential to proving or disproving a claim. Thus, *allegations* that something happened are insufficient, and the non-moving party must cite *record evidence* demonstrating that there is a basis in the record to support the factual finding. Additionally, there must be more than a mere scintilla of evidence, but enough

14

evidence to support entry of judgment in favor of the non-movant. *Anderson*, 477 U.S. at 252.

This summary judgment procedure creates a risk that a party may move, prematurely, for summary judgment, before the non-moving party is able to obtain necessary information through discovery. Thus, the rule contains a safety mechanism, FED. R. CIV. P. 56(d), allowing the non-moving party to obtain discovery necessary to oppose the pending motion. Importantly, the rule provides that the non-moving party must establish by affidavit or declaration that "for specified reasons, it cannot present facts essential to justify its opposition." Thus, a party opposing summary judgment cannot obtain the protection of Rule 56(d) "by simply stating that discovery is incomplete." *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1308 (10th Cir. 2007). Rather, a party seeking to invoke Rule 56(d) "must 'file an affidavit that explain[s] why facts precluding summary judgment cannot be presented. This includes identifying the probable facts not available and what steps have been taken to obtain these facts.'" *Id.* (quoting *Trask v. Franco*, 446 F.3d 1036, 1042 (10th Cir. 2006)). In addition, the moving party must also show "how additional time will enable him to rebut the movant's allegations of no genuine issue of material fact." *F.D.I.C. v. Arciero*, 741 F.3d 1111, 1116 (10th Cir. 2013) (quoting *Trask*, 446 F.3d at 1042). The moving party "bears the burden to show what specific facts it hopes to discover that will raise an issue of material fact." *Continental Maritime of San Francisco, Inc. v. Pacific Coast Metal Trades District Council*, 817 F.2d 1391, 1395 (9th Cir. 1987). A party's failure to file an affidavit specifying legitimate needs for discovery to oppose summary judgment is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate. *Nguyen v. CNA Corp.*, 44 F. 3d 234, 242 (4th Cir. 1995).

III. Bilateral Modification Nos. 3 and 9 Released Odyssey's Micropile Claim

The government cites to Modification Nos. 3 and 9 as an accord and satisfaction and as a release of Odyssey's claims.[2] "The essential elements of an effective accord and satisfaction are proper subject matter, competent parties, meeting of the minds of the parties, and consideration." *Mil-Spec Contractors, Inc. v. United States*, 835 F.2d 865, 867 (Fed. Cir. 1987) (citations omitted). An accord and satisfaction bars further recovery. *COSTAR III, LLC*, ASBCA No. 56479, 11-2 BCA ¶ 34,830 at 171,370. A release is a contractual defense and must be interpreted in the same manner as any other contract term or provision. *See, e.g., Bell BCI Co. v. United States*, 570 F.3d 1337, 1341 (Fed. Cir. 2009) (citing *Metric Constructors, Inc. v. United States*, 314 F.3d 578, 579 (Fed. Cir. 2002)). In interpreting a release, we first examine whether the modification is ambiguous; if the terms are unambiguous, we

---

[2] The government additionally argues that CLIN 007 was a fixed-price line item and not subject to adjustment (gov't mot. at 30-31). Because we hold that Odyssey released its claim in Modification No. 9, we need not reach this issue.

cannot consider extrinsic evidence. *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1435 (Fed. Cir. 1996). If the modification is ambiguous, requiring the weighing of extrinsic evidence, the matter generally is not amenable to summary resolution. *Beta Sys., Inc. v. United States*, 838 F.2d 1179, 1183 (Fed. Cir. 1988). The Board has resolved claims on summary judgment under the theories of accord and satisfaction, and release, based on language contained in contract modifications. *See*, *e.g.*, *Wescorp, Inc.*, ASBCA No. 54256, 05-1 BCA ¶ 32,826; *Whiting-Turner Contracting Company*, ASBCA No. 56319, 10-1 BCA ¶ 34,436; and *Colorado River Materials, Inc. d/b/a NAC Construction*, ASBCA No. 57751, 13-1 BCA ¶ 35,233.

Modification No. 3 was initially issued unilaterally, so it does not contain a release. The modification addresses Odyssey's "REA for Micropile Foundation System" and covers Odyssey's request for information 3, and associated delays related to the installation of additional micropiles (R4, tab 56 at 3). Odyssey had previously been compensated for 8 additional micropiles in Modification No. 2. Modification No. 9 converted Modification No. 3 from a unilateral modification to a bilateral modification, and addressed additional matters not relevant to this appeal. Modification No. 9 contains a general release providing:

> It is understood and agreed that this adjustment constitutes compensation in full for all costs, directly and indirectly attributable to the changes ordered herein, for all delays related thereto, and for performance of the changes within the time frame stated. In addition, the Contractor hereby releases the Government from any and all liability under this contract for further equitable adjustments attributable to such facts or circumstances giving rise to the changes ordered herein.

(R4, tab 58 at 3). Modification No. 3 addressed Odyssey's REA for the Micropile Foundation System and Modification No. 9 converted Modification No. 3 to a bilateral modification, thus Odyssey's claim, which covers the same costs as its REA for the Micropile Foundation System, was waived by Modification No. 9. We find the release language to be unambiguous, and will not resort to extrinsic evidence to interpret the release. *Colorado River*, 13-1 BCA ¶ 35,233 at 172,991.

Odyssey asserts that the government breached its duty of good faith and fair dealing (compl. ¶¶ 143-47). As we noted in our prior decision in this appeal, every contract "imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." *Metcalf Constr. Co. v. United States*, 742 F.3d 984, 990 (Fed. Cir. 2014) (quoting Restatement (Second) of Contracts § 205 (1981)). However, this duty of good faith and fair dealing "cannot expand a party's contractual duties beyond those in the express contract or create duties inconsistent with the

contract's provisions." *Metcalf Constr.*, 742 F.3d at 991 (quoting *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 831 (Fed. Cir. 2010)). The implicit duty prevents a contracting party from "interfer[ing] with the other party's performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract. *Metcalf Constr.*, 742 F.3d at 991 (quoting *Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005) (emphasis deleted)). We recently explained that "the doctrine imposes duties that fall within the broad outlines set forth by the express terms of the contract, approximating the parties' intent, as divined by the express terms of the contract, for addressing circumstances not specifically set forth by the contract." *Relyant, LLC*, ASBCA No. 59809, 18-1 BCA ¶ 37,085 at 180,539. Here, Odyssey has not identified in its opposition to the government's motion, any actions by the government that it contends violated the duty of good faith and fair dealing. Accordingly, we hold that the government has established that it is entitled to entry of summary judgment in its favor.

A. Odyssey Has Not Established A Factual Dispute Regarding The Lack Of A Meeting Of The Minds

The Board has previously held that there are "special and limited situations in which a claim may be prosecuted despite the execution of a general release." *Bender Shipbuilding and Repair Co.*, ASBCA No. 41459, 91-3 BCA ¶ 24,230 at 121,186. These exceptions include a mutual mistake where neither party intended to release a certain claim; where the parties' post release conduct indicates that the parties did not intend to abandon the claim; where the inclusion of a claim in a release was an obvious mistake; in situations involving fraud or duress (*Id.* (citing *J.G. Watts Constr. Co. v. United States*, 161 Ct. Cl. 801, 806-07 (1963))); and when "the contracting officer knows that the contractor is asserting a right to additional compensation, even though a formal claim has not been filed." *Matcon Diamond, Inc.*, ASBCA No. 59637, 15-1 BCA ¶ 36,144 at 176,408 (citing *JT Construction Co.*, ASBCA No. 54352, 06-1 BCA ¶ 33,182 at 164,464). Additionally, an accord and satisfaction or release may be voided if "a party's manifestation of assent was induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient was justified in relying." *Tzell Airtrak Travel Group Corp.*, ASBCA No. 57313, 11-2 BCA ¶ 34,845 at 171,409 (citing RESTATEMENT (SECOND) OF CONTRACTS § 164 (1981)). We find that none of these exceptions apply.

Here, Odyssey alleges that Modification No. 9 should not be given effect because the government "may have" inserted release language in Modification No. 9 to fraudulently induce Odyssey to sign the release (app. resp. at 14). Upon review of the entire record, and drawing all reasonable inferences in favor of Odyssey, we fail to find any evidence in the record that reasonably supports Odyssey's allegation of fraud or misrepresentation.

17

In opposing the government's summary judgment motion, this was the time for Odyssey to "put-up or shut-up" – that is, Odyssey could not rely upon assertions of counsel, or speculation as to what might have happened. Instead, Odyssey was required to cite to record evidence sufficient to demonstrate the existence of a material factual dispute – that is, it was required to cite evidence, with all inferences drawn in its favor, sufficient to oppose the summary judgment motion. The "object" of FED. R. CIV. P. 56(c) "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990). However, Odyssey failed to produce any evidence, with the exception of one email, written after the government had denied Odyssey's REA for the micropiles, stating that the release language "seem[s] to be a trick, trap or typo" (app. supp. R4, tab 127 at 1). Notably, the statement fails to directly assert that the insertion of the release language *was* a trick, trap or typo, but only that it "seem[s]" to be a potential error – leaving open the option that release language was properly included in the modification. The email does not directly state that the release was inserted without Odyssey's knowledge, and does not state that the release was not included in earlier drafts of the modification or that the government made any representations regarding the purpose of the modification. Moreover, the email indicates that Odyssey would respond to the government's statement after consulting with its counsel, yet no further communications are in the record.

The remainder of the purported evidence cited by Odyssey is not admissible evidence sufficient to establish a material factual dispute, and not sufficient to satisfy the requirements of FED. R. CIV. P. 56(c). For example, in attempting to establish the existence of a material factual dispute, Mr. Young's declaration states: "Odyssey believes this provision was fraudulently inserted by the Government in contravention of the parties' discussions concerning the modification, and has tailored its discovery requests to ascertain additional information to support its claim that the clause was fraudulently inserted. *See* Young decl., ¶¶ 7-11" (app. resp. at 8). However, this attempt to establish a factual dispute fails for multiple reasons. First, Mr. Young is counsel for Odyssey, and lacks personal knowledge as to what the appellant, Odyssey, "believes." Mr. Young's declaration does not assert that he participated in the negotiation of Modification No. 9, and thus the declaration is not based on personal knowledge and does not satisfy the requirements contained in Rule 56(c). Second, the declaration simply states a legal conclusion, that the provision was *fraudulently inserted*, and does not allege the facts necessary either to establish that the release language was improperly inserted, or that Odyssey was deceived by the government's statements or actions. "It is well settled that 'a conclusory statement on the ultimate issue does not create a *genuine* issue of fact.'" *Applied Cos. v. United States*, 144 F.3d 1470, 1475 (Fed. Cir. 1998) (emphasis in original) (quoting *Imperial Tobacco Ltd. v. Philip Morris, Inc.*, 899 F.2d 1575, 1581 (Fed. Cir. 1990)). Thus, Odyssey's

18

declaration is even less probative than the declaration that the Board held to be insufficient in another appeal, again involving *Relyant LLC*.

> As discussed above, a non-movant seeking to defeat summary judgment by suggesting conflicting facts "must set forth specific facts showing that there is a genuine issue for trial." . . . Mr. Biles's declaration does not set forth facts supporting a single element of the defense, even though it would need facts supporting all three in order to be effective: nowhere, except perhaps by implication, does he allege that Relyant's agreement to the terms of the modification to DO1 was involuntary; nowhere does he present any facts explaining why the circumstances presented no alternative to agreeing to the modification that he now alleges was improper; and nowhere does he allege any coercive acts by the government. Thus, there are no facts supporting the defense of economic coercion that preclude summary judgment.

*Relyant, LLC*, ASBCA No. 58172, 16-1 BCA ¶ 36,228 at 176,750, *aff'd* 683 Fed. Appx. 960 (Fed. Cir. 2017) (nonprecedential).

Similarly, the Board's holding in *Colorado River* is instructive. As in this appeal, in *Colorado River*, the contractor alleged that there was not a meeting of the minds regarding the release contained in a modification, and that the government had made misrepresentations during negotiation of the modification. Unlike in this appeal, the appellant in *Colorado River* filed a declaration, based on personal knowledge of the declarant, that he believed based on repeated inquiries that the government was still considering a change order, and that he would not have signed the release if the government informed him, in response to his repeated inquiries, that the modification settled the change order request. *Colorado River*, 13-1 BCA ¶ 35,233 at 172,992. The Board held that the allegations were insufficient to demonstrate the existence of a material factual dispute, given the plain language of the release and other communications from the government to the appellant. *Id*. Here, Odyssey has introduced far less evidence in support of its defense that there was not a meeting of the minds than did the contractor in *Colorado River*, and we similarly find the absence of a material factual dispute.

Odyssey could have satisfied its burden in opposing the government's motion for summary judgment in multiple ways. If true, Odyssey could have submitted an affidavit or declaration from an Odyssey employee with personal knowledge of the negotiation of Modification No. 9, or Odyssey could have introduced into the record drafts of Modification No. 9, or Odyssey could introduce emails between the

government and Odyssey regarding the purpose and content of Modification No. 9, or even contemporaneous notes regarding the negotiation of modification 9.[3]

  B. <u>Odyssey's Rule 56(d) Motion Does Not Establish The Need For Additional Discovery</u>

  Even in the absence of such a declaration or document sufficient to demonstrate a material factual dispute, Odyssey could have demonstrated that it required discovery to respond to the government's motion. However, an allegation that something might turn-up in discovery is insufficient to satisfy the requirements of FED. R. CIV. P. 56(d). It is the Board's practice to look to FED. R. CIV. P. 56 when evaluating motions for summary judgment. See Board Rule 7(c)(2); *Chugach*, 19-1 BCA ¶ 37,314 at 181,495. To obtain relief under FED. R. CIV. P. 56(d), the opposing party must do more than simply argue that discovery is incomplete, "but must explain specifically how additional discovery will allow the party to rebut the summary judgment motion." *Chugach*, 19-1 BCA ¶ 37,314 at 181,496 (citing *Garcia v. United States Air Force*, 533 F.3d 1170, 1179-80 (10th Cir. 2008); *Serdarevic v. Advanced Medical Optics, Inc.*, 532 F.3d 1352, 1363-64 (Fed. Cir. 2008)). Thus, if the sought-for discovery could not change the results of the pending motion for summary judgment, there is no basis for relief pursuant to the Rule. *See Simmons Oil Corp. v. Tesoro Petroleum Corp.*, 86 F.3d 1138, 1144 (Fed. Cir. 1996). Simply put, Odyssey's argument is that it was fraudulently induced to sign the modification, but that it needs discovery to find out what fraudulent statements the government made to induce it to sign the modification. At best, Odyssey cites to pending discovery requests for documents and e-mails between the government and Odyssey regarding Modification Nos. 3 and 9 and internal government documents and emails regarding communications with Odyssey regarding Modification Nos. 3 and 9. However, even if we were to grant Odyssey its requested discovery, and Odyssey were to obtain documents sufficient to demonstrate that the government inserted the release in mod no. 9 without informing Odyssey, that alone would not prevent entry of judgment in favor of the government. Instead, Odyssey would also need to introduce evidence that it was misled by the government's actions. "In order for appellant to prevail it must establish that the government made an erroneous representation of material fact that appellant honestly and reasonably relied on to its detriment." *Colorado River*, 13-1 BCA ¶ 35,233 at 172,991-92 (citing *T. Brown Constructors, Inc. v. Pena*, 132 F.3d 724, 729 (Fed. Cir. 1997)). Here, Odyssey has not introduced evidence that it honestly and reasonably relied on a government misrepresentation of fact. For that matter, Odyssey has not alleged what the government misrepresentation of fact was.

---

[3] Messrs. Larson, Hoopes, and McBride each filed declarations as part of Odyssey's claim (app. supp. R4, tabs 129, 130, 131). The only allegation relevant to this motion was Mr. Hoopes' statement that he "never understood any document to be a waiver of Odyssey's right to be paid in full for the micropile design that the Government approved" (app. supp. R4, tab 130 at 5).

Pursuant to Rule 56(d), Odyssey was required to explain *why* it was unable to respond and describe the types of discovery necessary to remedy this impediment. Thus, if true, an Odyssey employee could file a declaration that the employee or employees that negotiated Modification No. 9 were unavailable, due to death, infirmity, or because the employee or employees had left the employ of Odyssey under bad terms. If true, an employee could assert in a declaration that they believed that the release language was not contained in earlier drafts of the modification, but that Odyssey's copies of these communications are not available for some reason, such as computer problems. Any of these statements, and others not listed here, could demonstrate that discovery was reasonably likely to establish the existence of a material factual dispute. However, Odyssey put nothing on the record other than its attorney's allegations that are not based upon personal knowledge and that are not admissible evidence.[4] Moreover, to the extent that Odyssey alleges the existence of a "trick, trap, or typo" Odyssey must have a basis for this belief. If Odyssey believes that it was misled, it should be able to identify the misleading statements made by the government. Instead, we are left with counsel's statement that the government "may have" inserted release language in Modification No. 9 to fraudulently induce Odyssey to sign the release (app. resp. at 14). A statement by counsel that something "may have" happened utterly fails to demonstrate that discovery would enable Odyssey to oppose the pending summary judgment motion.

Odyssey argues that its submission of a declaration by counsel is sufficient to demonstrate the need for discovery in a Rule 56(d) motion, because the personal knowledge requirement in Rule 56(c) is not repeated in 56(d) and because a declaration by its client could disclose attorney-client privileged communications (app. mot. reply at 3) ("it seems reasonable to assume that Odyssey's counsel, as its agent, can attest to Odyssey's beliefs about key facts in this appeal without waiving the attorney-client privilege"). There are inconsistent holdings in Federal courts regarding whether the requirements of FED. R. CIV. P. 56(c)(4) that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge" applies in the context of a FED. R. CIV. P. 56(d) motion. *Compare Pastore v. Bell Telephone Co. of Pennsylvania*, 24 F.3d 508, 511 (3d Cir. 1994) (rejecting argument that statements made in a brief in opposition to summary judgment motion should be treated as equivalent to an affidavit and holding that a nonmovant's failure to file a formal affidavit seeking more discovery time is "usually fatal, because by not filing … '[they have] not preserved [their] objection to [their] alleged inability to obtain necessary

---

[4] Board Rule 10(c) permits the introduction of evidence that would not be allowed by the federal rules; however, the admission of this evidence is in the "sound discretion of the presiding Administrative Judge or examiner." Even if Mr. Young's declaration were admitted to evidence, for the reasons stated above, it would still be insufficient to establish a material factual dispute.

discovery.'" (quoting *Falcone v. Columbia Pictures Industries, Inc.*, 805 F.2d 115, 117 n.2 (3d Cir. 1986))); with *First Chicago Intern. v. United Exchange Co.*, 836 F.2d 1375, 1380 (D.C. Cir. 1988); *accord Abercrombie & Fitch Stores*, *Inc. v. American Eagle Outfitters*, *Inc.*, 280 F.3d 619, 627-28 (6th Cir. 2002) (allowing nonmovant's brief opposing summary judgment that explained the need for further discovery to suffice despite failure to file a separate affidavit). In these instances, courts have treated statements of counsel in signed court filings as equivalent to an affidavit or declaration.

However, here, even if we were to ignore the personal knowledge requirement of Rule 56, the Young declaration still fails to satisfy the requirements of Rule 56(d) because it does not explain the discovery it requires or the facts it hopes to prove. The affidavit simply states a legal conclusion that there was fraud but fails to indicate what information it believes to exist that it does not have access to. Litigants requesting discovery for fraud in the inducement defenses have been required to demonstrate that proposed discovery is reasonably likely to establish the existence of a material fact *Frankel v. ICD Holdings S.A.*, 930 F.Supp. 54, 66-67 (S.D.N.Y. 1996); *Cannon v. District of Columbia*, 717 F.3d 200, 208 (D.C. Cir. 2013).

Moreover, Odyssey does not even assert that it was misled by written, rather than oral, statements. If Odyssey contends that the misleading statements were in emails between it and the government, Odyssey does not explain why it does not have copies of these misleading e-mails. To the extent there were oral misleading statements, Odyssey does not make any allegations as to who made the statements on behalf of the government or what they said, and has not identified any requests for depositions that would result in information to respond to the pending summary judgment motion. In short, Odyssey presents no basis whatsoever as to why it believes that it was misled by the government, and its Rule 56(d) motion cannot be seen as anything other than an attempt to delay the entry of judgment based upon the idea that a fishing expedition might turn-up an incorrect statement by the government. Courts have typically granted discovery when the evidence is solely in the possession of the party moving for summary judgment. *See*, *e.g.*, *Costlow v. United States*, 552 F.2d 560, 564 (3d Cir. 1977). However, here, Odyssey has not presented any explanation for why it is unable to identify the misrepresentation that it relied upon. As Homer Simpson said, "[i]t takes two to lie; one to lie, and one to listen."[5] Odyssey's failure to identify the alleged misleading statements, even in general terms, is fatal to its defense.

Odyssey additionally makes unsworn statements of counsel in its brief. Even if we were to consider these statements, they would be insufficient to establish the need for additional discovery, because they simply assert legal conclusions without any

---

[5] Matt Groening, *The Simpsons: A Complete Guide to Our Favorite Family*, Episode 8F19 "Colonel Homer" 85 (1997).

detail. In its opposition brief, Odyssey's counsel asserts that Odyssey was unaware of the fact that Modification No. 3 was converted to a bilateral modification, and that the release language "may have [been] inserted surreptitiously to procure Odyssey's signature by fraud" (app. resp. at 14) and that the clause was "fraudulently inserted" (*id.* at 17). Odyssey's counsel additionally stated that Odyssey had lost many of its employees, and was unable to obtain declarations from these unnamed employees because they were no longer employed by Odyssey (app. Rule 56(d) mot. reply at 3). However, Odyssey fails to allege that specific employees with knowledge of specific communications were unavailable.

To establish entitlement to additional discovery prior to the entry of summary judgment, the party opposing the summary judgment motion must make an authoritative statement that: (1) explains the party's current inability to adduce the facts essential to filing its opposition to the summary judgment motion, (2) provides a plausible basis for believing that the sought-after facts can be assembled within a reasonable time, and (3) indicates how those facts would influence the outcome of the pending summary judgment motion. *Doe v. Brown University*, 943 F.3d 61, 71 (1st Cir. 2019). Odyssey's filings satisfy none of these elements. Odyssey does not explain why it is unable to identify the government's purportedly misleading statements, does not provide a plausible basis for believing that the facts could be assembled in a reasonable time, and does not indicate how the facts might influence the outcome of the summary judgment motion, beyond simply alleging fraud. Odyssey does not allege that it made any attempt to contact its former employees or what it believes these employees would say. More specifically, Odyssey does not explain why Messrs, Larson, Hoopes, and McBride were each able to provide declarations as part of Odyssey's claim in June 2019 (app. supp. R4, tabs 129-31), but were unavailable provide a declaration in late 2020.

IV. Odyssey's Claimed Lost Profits Are Speculative And Unrecoverable

Odyssey's claim asserts entitlement to $15 million in lost profits. As a general rule, a release of all claims includes a claim for lost profits. *See*, *e.g.*, *Exceed Resources, Inc.*, ASBCA No. 61652, 20-1 BCA ¶ 37,634 at 182,720. However, to the extent that Odyssey's claim for lost profits could survive our holding that Odyssey's alleged additional costs related to the micropiles were resolved by Modification No. 9, we deny Odyssey's claim for lost profits as speculative.

> In order to recover lost profits for breach of contract, appellant must demonstrate, by a preponderance of the evidence, that:
>
> "(1) [T]he loss was the proximate result of the breach;

(2) the loss of profits caused by the breach was within the contemplation of the parties because the loss was foreseeable or because the defaulting party had knowledge of special circumstances at the time of contracting; and

(3) a sufficient basis exists for estimating the amount of lost profits with reasonable certainty."

*John Shaw LLC d/b/a Shaw Building Maintenance*, ASBCA Nos. 61379, 61585, 19-1 BCA ¶ 37,216 at 181,184 (quoting *Energy Capital Corp. v. United States*, 302 F.3d 1314, 1325 (Fed. Cir. 2002)).  While the Board has considered claims for lost profits in certain appeals, the award of lost profits has been limited to the contractor's profits on the contract under review.  Here Odyssey is alleging lost profits on hypothetical contracts that it contends it would have been awarded but for the government's failure to pay an amount in dispute in a request for equitable adjustment. The Board has held that "if the alleged breach damages are not derived from nor were they contemplated by the instant contracts but arise from 'other independent and collateral undertakings,' then they are 'too uncertain and remote to be taken into consideration as a part of the damages occasioned by the breach of the contract in suit.'" *Eaton Contract Services, Inc.*, ASBCA No. 52888 *et al.*, 04-1 BCA ¶ 32,536 at 160,917 (quoting *Energy Capital Corp.*, 302 F.3d 1314, 1328 citing *Wells Fargo Bank N.A. v. United States*, 88 F.3d 1012, 1022-23 (Fed. Cir. 1996)); *see also*, *Nexagen Networks, Inc.*, ASBCA No. 60641, 19-1 BCA ¶ 37,258 at 181,328.

Odyssey's $15 million claim for compensatory damages is based upon a simplistic multiplier model (app. supp. R4, tab 133).  In the model, Odyssey's expert assumes that its $650,000 micropile claim would be available as an increase to Odyssey's working capital.  The model assumes that an increase in working capital creates a 35-fold increase in bonding capacity.  Odyssey then assumes that it will be awarded new contracts as a share of its bonding capacity, and that it will earn an 8% profit on the contracts.  The hypothetical profit is then treated as an increase in working capital, resulting in a further 35-fold increase in bonding capacity.  Thus, the model unrealistically assumes that Odyssey can obtain unlimited work, constrained only by its bonding capacity, which increases by $35 for every $1 of profit.  Further, the model does not consider Mr. McBride's statement in the Savannah District appeal, that the most important limitation on Odyssey's bonding capacity was from having a corporate officer under federal investigation (R4, tab 142 at 11-12) as an alternative basis for Odyssey's purported lost profits.

Odyssey asserts that consequential damages are available against the United States, relying upon the Federal Circuit's holding in *Anchor Sav. Bank, FSB v. United States*, 597 F.3d 1356, 1361 (Fed. Cir. 2010) and the Court of Federal Claims' holding in *Stockton East Water Dist. v. United States*, 109 Fed. Cl. 760, 782 (2013).  Odyssey

24

additionally asserts that if the Board follows its precedent in *John Shaw*, cited above, "the Board is committing error which Odyssey will seek to have reversed on appeal" (app. resp. at 20). Odyssey's argument ignores the difference between CDA claims, which may be brought before the Board or the Court of Federal Claims, and non-CDA contract claims, that that may be brought only before the Court of Federal Claims. The cases cited by Odyssey are non-CDA cases. Significantly, contracts issued pursuant to the CDA contain a termination for convenience clause, allowing the government, absent bad-faith, to terminate any contract at any time. Thus, damages in a CDA case are limited by the constructive termination of the contract and the limitations on damages contained in a termination for convenience. *See*, *e.g.*, *Catherine Kurkjian*, ASBCA No. 61154, 20-1 BCA ¶ 37,594 at 182,538; *appeal docketed*, No. 20-2201 (Fed. Cir. Aug. 26, 2020). Odyssey's claim for lost profits is denied.

## V. Odyssey's Implied-In-Fact Contract Claim Is Dismissed for Lack of Jurisdiction

In our earlier holding in *Odyssey*, 20-1 BCA ¶ 37,510, we held that we lacked jurisdiction to entertain Odyssey's claim related to alleged implied-in-fact contracts regarding the payment of invoices or to respond to requests for information within 14 days, because the claims had not been submitted to the contracting officer for a decision. We also held that we possessed jurisdiction with regard to Odysseys' assertion of an implied-in-fact contract regarding micropiles. *Id.* at 182,213. We additionally noted that there was a potential jurisdictional defect because an implied-in-fact contract cannot cover the same subject matter as an express contract. *Id.* at 182,213 n.4 (citing, *Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1326 (Fed. Cir. 1997)). Odyssey did not present its allegations of implied-in-fact contracts to the contracting officer in its August 2019 claim and, thus, we are still without jurisdiction to entertain this portion of Odyssey's complaint. In its response to the government's motion, Odyssey concedes that there cannot be an implied-in-fact contract covering the same subject matter as an express contract, and appears to concede the issue with regard to the micropile claim, but not the 14 day time limit to respond to requests for information (app. resp. at 21 ("Accordingly, if the Government concedes that it had an express contract with Odyssey and that the contract included an agreement by the Government to respond to RFIs within 14 days and submittals within 30 days . . . then Odyssey's second cause of action for breach of implied-in-fact contract is based on the same subject matter as the express contract, and may rightly be dismissed.")). As noted above, we lack jurisdiction to entertain Odyssey's claim regarding the time limit to respond to requests for information because it was not presented to the contracting officer for a final decision. To the extent Odyssey is still asserting its claim of an implied-in-fact contract regarding the micropiles, the claim was waived by Modification No. 9 as discussed above, and also fails to state a claim upon which relief may be granted because an implied-in-fact contract cannot exist where it covers the same obligations as an express contract. *Trauma Serv.*, 104 F.3d at 1326.

CONCLUSION

For the reasons stated above, Odyssey's appeals are denied.

Dated: July 29, 2021

_____
DAVID D'ALESSANDRIS
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

_____
RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

_____
OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 62062, 62279, Appeals of Odyssey International, Inc., rendered in conformance with the Board's Charter.

Dated: July 29, 2021

_____
PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

26